IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| :MEGESO-WILLIAM-ALAN: DENIS a.k.a. WILLIAM DENIS | ) ) ) | Civil NO. 21-00011 SOM-RT |
| Plaintiff, | ) ) | ORDER GRANTING MOTIONS TO DISMISS |
| | ) ) ) | |
| vs. | ) ) | |
| DAVID Y. IGE, CLARE E. CONNORS, DEREK S.K. KAWAKAMI, TODD RAYBUCK, DEREK KELLEY, RUSSELL HIMONGALA, and ARRYL KANESHIRO, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |
| _____ | ) | |

**ORDER GRANTING MOTIONS TO DISMISS**

I.        **INTRODUCTION**

On December 5, 2020, Plaintiff Megeso-William-Alan Denis was arrested during a protest in Kapaa, on the island of Kauai.  According to Denis, even though he was socially distanced from other people, police officers arrested him because he was not wearing a face mask.  Denis claims that during the arrest the officers treated him roughly, and that he suffered injuries as a result.  Denis, proceeding *pro se*, has sued two of the police officers involved in his arrest, Defendant Derrick[1] Kelley

_____

[1]  In his answer, Kelley asserts that the Complaint incorrectly identifies him as "Derek Kelley," but that his name should be spelled "Derrick."  ECF No. 35, PageID # 200.

and Defendant Joseph Russell Himongala.[2]  This order does not
address Denis's claims against the two officers.

Instead, the present order concerns Denis's claims
against five other Defendants who did not physically arrest him.
Denis contends that Defendants David Y. Ige (Hawaii's Governor),
Clare E. Connors (Hawaii's Attorney General), and Derek S.K.
Kawakami (Kauai's Mayor) violated his constitutional rights by
issuing rules that required him to wear a mask in the first place
(even though he was allegedly complying with those rules when he
was arrested).  For instance, he asserts that the rules violated
his "unenumerated right to breathe oxygen without restriction."
Denis also maintains that Defendant Todd Raybuck (Kauai's Police
Chief) and Defendant Arryl Kaneshiro (the Chairperson of Kauai's
County Council) are responsible for his wrongful arrest because
of their positions of authority.

Before the court are motions to dismiss filed by those
five defendants (the "Moving Defendants").  Those motions are
granted.  Denis's claims against the Moving Defendants are
dismissed.

II.     **BACKGROUND**

A.     **The COVID-19 Pandemic.**

"In December 2019, individuals in Wuhan, China

---

[2] In his answer, Himongala states that the Complaint
incorrectly identifies him as "Russell Himongala," but that his
first name is Joseph.  ECF No. 34, PageID # 184.

identified a novel coronavirus.  In the ensuing months, the disease spread across the world.  The novel coronavirus came to be known as SARS-CoV-2, and the disease that it causes is called COVID-19.  The virus is highly transmissible and is primarily spread through exchange of respiratory droplets emitted when a person talks, breathes, coughs, or sneezes." *Heights Apartments, LLC v. Walz*, 2020 WL 7828818, at *1 (D. Minn. Dec. 31, 2020). According to the Centers for Disease Control and Prevention, by May 12, 2021, more than 32 million cases of COVID-19 had been identified in the United States, and 580,073 people have died. https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited May 12, 2021).

### B.  Hawaii's Initial Response to the Pandemic.

Hawaii's first case of COVID-19 was confirmed on March 6, 2020.  Audrey McAvoy, *Hawaii Records its First Case of New Coronavirus*, A.P. News, March 6, 2020, https://apnews.com/ article/877078a229df18bbbb531524dab3f96c.  On March 16, 2020, Mayor Kawakami, citing the dangers of the disease, issued an Emergency Rule prohibiting gatherings of 10 or more people in the County of Kauai.  Mayor's Emergency Rule #1, https://www.kauai.gov/Portals/0/Civil_Defense/EmergencyProclamati ons/Mayor%27s%20Emergency%20Rule%20%231_20200316.pdf. Shortly thereafter, on March 21, Governor Ige required all persons entering the State of Hawaii to self-quarantine for 14

days after arrival.  Second Supplementary Proclamation,
https://governor.hawaii.gov/wp-content/uploads/2020/03/2003152-AT
G_Second-Supplementary-Proclamation-for-COVID-19-signed.pdf.  Two
days later, on March 23, 2020 Governor Ige ordered all persons in
the State of Hawaii to shelter in place until April 30, 2020.
Third Supplementary Proclamation, https://governor.hawaii.gov/
wp-content/uploads/2020/03/2003162-ATG_Third-Supplementary-Procla
mation-for-COVID-19-signed.pdf.

     **C.**   **Mask Mandates in Hawaii.**

As COVID-19 continued to spread, the medical community
and the Centers for Disease Control and Prevention worked to
identify measures that could limit the virus's transmission.  By
early April, those experts were recommending wearing face
coverings in public.  Specifically, on April 3, 2020, the CDC
recommended "wearing cloth face coverings in public settings
where other social distancing measures are difficult to maintain
(e.g., grocery stores and pharmacies) especially in areas of
significant community-based transmission."  Centers for Disease
Control and Prevention, *Recommendation Regarding the Use of Cloth
Face Coverings, Especially in Areas of Significant Community-
Based Transmission*, April 3, 2020, *available at*
https://web.archive.org/web/20200404003200/
https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cl

oth-face-cover.html.[3]

Both Governor Ige and Mayor Kawakami revised their emergency rules to incorporate that recommendation.  On April 13, 2020, Mayor Kawakami, after noting that the CDC "currently recommends wearing cloth face coverings in public settings," issued an order requiring all persons over the age of five on Kauai to wear some form of face covering or mask when outside of their homes.  Mayor's Emergency Rule #6, https://www.kauai.gov/ Portals/0/Civil_Defense/EmergencyProclamations/Mayor%27s%20Emerge ncy%20Rule%20%236%2020200413.pdf.  Violations were punishable by a $5,000 fine or a prison sentence of up to one year.  *Id.* Similarly, on April 17, 2020, after recognizing that the CDC had "recommended wearing cloth face coverings in public settings where other social distancing measures are difficult to maintain," Governor Ige updated his shelter-in-place order by

---

[3]  In ruling on the Moving Defendants' motions, the court can consider the various releases posted on the CDC's website. Courts may take judicial notice of such documents, even if they are currently only available by accessing the Internet Archive's Wayback Machine.  *See, e.g., Brown v. Google LLC*, 2021 WL 949372, at *5 (N.D. Cal. Mar. 12, 2021) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Murphy v. Lamont*, 2020 WL 4435167, at *10 n.14 (D. Conn. Aug. 3, 2020) ("The CDC is the nation's healthcare protection agency. The court takes judicial notice of CDC's various COVID-19-related postings and guidance."); *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (taking judicial notice of a website archived on the Wayback Machine).  The fact that the CDC actually released the statements cited by the court cannot reasonably be disputed.

requiring individuals to wear a face mask if they did leave their home to shop at essential businesses.  Fifth Supplementary Proclamation, https://governor.hawaii.gov/wp-content/uploads/ 2020/04/2004088-ATG_Fifth-Supplementary-Proclamation-for-COVID-19 -distribution-signed.pdf.  Again, violations were punishable by a $5,000 fine or a prison sentence of up to one year. *Id.*

As the pandemic progressed, the CDC issued several additional releases endorsing face masks.  For instance, on July 14, 2020, the CDC issued a press release stating that "cloth face coverings are a critical tool in the fight against COVID-19 that could reduce the spread of the disease," and that "[t]here is increasing evidence that cloth face coverings help prevent people who have COVID-19 from spreading the virus to others."  Centers for Disease Control and Prevention, *CDC Calls on Americans to Wear Masks to Prevent COVID-19 Spread*, July 14, 2020, https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-m asks.html.

Governor Ige and Mayor Kawakami continued to require individuals to wear face coverings in public settings.  At the times at issue in this case, the following orders (collectively, the "Mask Mandates") were in force, and violations were again punishable by a fine of $5,000 or a prison sentence of up to one year:

> **State of Hawaii:** All individuals shall wear
> face coverings over their noses and mouths

6

when in public settings.

The only exceptions to this requirement are:

. . .

J. While outdoors when physical distance of six (6) feet from other individuals (who are not members of the same household/living unit/residence) can be maintained at all times.

**County of Kauai:** [A]ll persons five (5) years of age or older are required to wear a face covering over their nose and mouth, whether indoors or outdoors, in any setting in which they are in close contact (within 6 feet) of people who don't live in their immediate household. Face coverings must be worn by employees, customers, and visitors at all times inside any establishment in which close contact may occur.

. . .

Sixteenth Emergency Proclamation, https://governor.hawaii.gov/ wp-content/uploads/2020/11/2011098-ATG_Sixteenth-Proclamation-Rel ated-to-the-COVID-19-Emergency-distribution-signed.pdf; Mayor's Emergency Rule #19 (As Amended), https://www.kauai.gov/Portals/ 0/Civil_Defense/EmergencyProclamations/2010134-COK_Mayor%27s%20Em ergency%20Rule%20No_%2019%2C%20Amendment%20No_%201%20%28certified %29%20-%20signed.pdf.

### D.   Denis's Arrest

On December 5, 2020, Denis attended a protest in Kapaa, Kauai. ECF No. 1, PageID # 14. At the protest, Denis allegedly

held a "free speech sign."[4]  *Id.*  At some point, according to
Denis, several police officers arrived and informed Denis that he
was violating the law because he was not wearing a face mask.
*Id.*  Denis contends that he did not need to wear a mask because
he was more than 18 yards away from any other protestor.  *Id.*
Nevertheless, two police officers, Defendants Derrick Kelley and
Joseph Russell Himongala, allegedly arrested him.  *Id.*

Denis alleges that during the arrest, Kelley and
Himongala "manhandle[d]" him, causing "physical injuries to his
hands, wrists, and shoulder area."  *Id.* at 15.  The Complaint
also states that Denis "received additional injuries to his
hands, wrists, shoulder, and neck while being forcibly placed in
the police cruiser."  *Id.*  The officers took Denis to Mahelona
Hospital for evaluation, where he was allegedly "diagnosed [with]
a cervical sprain to the neck area, soft tissue damage to the
shoulder and soft tissue damage and bone bruising in the wrists."
*Id.*  After leaving the hospital, Denis was allegedly incarcerated
for several hours, until he posted bail.  *Id.*

It appears that, at some point, Denis was charged with
violating the Mask Mandates.  Denis states that the charges
against him were dismissed on either December 12, 2020, *see* ECF
No. 50, PageID # 579, or February 12, 2021, *see* ECF No. 43,

---

[4]  In his opposition, Denis indicated that the sign read "I
will not be muzzled."  ECF No. 43, PageID # 254.

PageID # 244.

### E.   Procedural Background.

On January 6, 2021, Denis filed this action against Defendants Ige, Connors, Kawakami, Raybuck, Kelley, Himongala, and Kaneshiro.[5]  The Complaint claims that Defendants are liable under 42 U.S.C. § 1983[6] because the "unlawful arrest and incarceration of Denis under pretenses effectuated by the Governor's Emergency Proclamation Related to COVID-19" violated Denis's "First, Ninth, and Fourteenth Amendment rights."  ECF No. 1, PageID # 2-3.  His claims appear to fall into three categories.

**The Police Officers.**  First, Denis brought claims against two police officers involved in his arrest, Kelley and Himongala.  Denis alleges that those two officers violated his rights by carrying out "an unjust arrest and incarceration . . . based on the premise that he was failing to abide by the Governor's rules related to COVID-19."  ECF No. 1, PageID # 7.

---

[5]  Denis sued each Defendant in his or her individual and official capacities.

[6] In his opposition, Denis cites *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  "A *Bivens* action is the federal analog to suits brought against state officials under [§ 1983]."  *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006).  In other words, constitutional claims against state officials are § 1983 actions, whereas claims against federal officials fall under *Bivens.  See Hydrick v. Hunter*, 669 F.3d 937, 940 n.3 (9th Cir. 2012).  Because all Defendants are state or county officials, § 1983 applies here.

In short, Denis appears to be arguing that the two officers wrongfully arrested him without probable cause, and that the manner of the arrest violated the Fourth Amendment because the officers used excessive force.  *Id.* at 16.

**State and County Officials**.  Second, Denis has brought claims against the State and County officials involved in promulgating the Mask Mandates.  Denis alleges that Governor Ige and Mayor Kawakami issued the proclamations, supplements, and executive orders at issue, and that Attorney General Connors "formally approved" those orders.  *Id.* at 5-6.  Denis appears to be claiming that those three Defendants violated his constitutional rights by issuing the Mask Mandates, because, among other things, the mandates impermissibly burden his "unenumerated right to breathe oxygen without restriction." *Id.* at 11.

**Other County Officials**.  Finally, Denis has brought claims against two other Kauai officials, Chief of Police Todd Raybuck and County Council Chairperson Arryl Kaneshiro.  Denis appears to be alleging that Raybuck and Kaneshiro are indirectly responsible for his arrest.  He states that Raybuck is "responsible for the actions of officers within the police force, including those actions which unduly violated [his] constitutional rights," and that Kaneshiro's "failure . . . to create long term policy that represents the will of the people is

10

equivalent to complicity with the actions of the other
Defendants[.]"  *Id.* at 6-7.

Denis seeks "a combined restitution of six-hundred and
thirty-two million dollars" from Defendants collectively, in
addition to payment of his medical bills and legal costs.  *Id.* at
18.  He also requests "a public apology from each of the
Defendants," an injunction preventing Defendants from enforcing
the Mask Mandates, and declaratory relief stating that the Mask
Mandates are unconstitutional.  *Id.* at 18-19.

Governor Ige, Mayor Kawakami, Attorney General Connors,
Chief Raybuck, and Chairperson Kaneshiro moved to dismiss the
complaint on the grounds that Denis failed to state a claim
against them and that some of Denis's claims against them were
barred by sovereign immunity.  Officers Kelley and Himongala did
not move to dismiss and instead filed answers.  On the present
motions, only the claims against Ige, Kawakami, Connors, Raybuck,
and Kaneshiro are at issue.[7]

---

[7] In his opposition, Denis repeatedly argues that Kelley and
Himongala violated his constitutional rights.  *See, e.g.*, ECF No.
43, PageID # 252.  But because Kelley and Himongala did not move
to dismiss Denis's complaint, Denis's claims against those two
Defendants are left for further adjudication.  The question
before the court is whether the claims against the other
Defendants also survive.

III.        **LEGAL STANDARD.**

A.          **Rule 12(b)(1).**

Under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  An attack on subject matter jurisdiction "may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction[,]" while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

Defendants appear to bring a facial attack.  In deciding such a motion, a court must assume the facts alleged in the complaint to be true and construe them in the light most favorable to the nonmoving party.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  However, courts "do not accept legal conclusions in the complaint as true, even if 'cast in the form of factual allegations.' " *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (emphasis in original) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

12

### B.    Rule 12(b)(6).[8]

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of a complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).  On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact."

---

[8]    In the Ninth Circuit, "[i]t is not entirely clear whether an Eleventh Amendment challenge should be analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Monet v. Hawaii*, 2011 WL 2446310, at *3 (D. Haw. June 14, 2011).  But, in this case, "whether the court examines Eleventh Amendment immunity under Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim makes no difference, as those standards are essentially the same for purposes of this motion." *Id.*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

IV.     **ANALYSIS.**

> A.   **Denis Has Failed to State a Claim Against Defendants Ige, Connors, and Kawakami.**

The constitutionality of the Mask Mandates is central to several of Denis's claims.  Denis appears to argue that he is entitled to damages because Governor Ige and Mayor Kawakami[9]

---

[9]   In his motion to dismiss, Mayor Kawakami observes that, on multiple occasions, Denis alleges that his injuries were caused by the Governor's statewide mask mandate, rather than the Kauai County mandate issued by Mayor Kawakami.  ECF No. 24-1,

14

violated his constitutional rights by issuing the Mask Mandates, and that Attorney General Connors participated in the violation by approving the Governor's Emergency Proclamation.  ECF No. 1, PageID # 4-6.  Denis also asks this court to declare the Mask Mandates unconstitutional and to issue an injunction preventing Defendants from enforcing them.  Those claims all fail.  Denis has not shown that the Mask Mandates infringe on any of the rights guaranteed by the Constitution.

> **1.    The Court Need Not Decide Whether the Usual Constitutional Framework Applies To Decisions Made During a Pandemic, Because Denis's Claims Fail Under any Standard.**

Before reaching the substance of Denis's constitutional claims, this court must address a preliminary question: whether an approach based on the traditional tiers of scrutiny applies to constitutional review during a pandemic.  The Moving Defendants assert that the Mask Mandates are emergency measures to which this court should apply the "highly deferential standard" articulated in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), rather than the usual constitutional framework. ECF No. 31-1, PageID # 127-30.

---

PageID # 81-82.  However, at one point, Denis does refer to the "Governor's and Mayor's proclamations," ECF No. 1, PageID # 14, and Denis's claims against Mayor Kawakami include allegations that he "issued the proclamations and supplements and executive orders for this county."  *Id.* at 6.  This court therefore liberally construes Denis's claims against Mayor Kawakami and assumes that Denis is asserting constitutional claims against him because he issued the Kauai County mask mandate.

In *Jacobson*, the Supreme Court considered a challenge to a regulation that required individuals to be vaccinated during a smallpox outbreak.  197 U.S. at 12-13.  The defendant asserted that the law was unconstitutional because it was "hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best."  *Id.* at 26.

The Supreme Court disagreed.  The Court began by recognizing that the Constitution does not grant individuals an absolute freedom from restraint:

> There are manifold restraints to which every person is necessarily subject for the common good. . . .  Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to [act without regard for] the injury that may be done to others. . . .  Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will.  It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is, then, liberty regulated by law.

*Id.* at 26-27 (quotation marks omitted).  Such regulations are particularly important during a pandemic.  When society is placed "under the pressure of great dangers," it is "the duty of the constituted authorities primarily to keep in view the welfare, comfort, and safety of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few."  *Id.* at 29.

Accordingly, the Court held that the smallpox

vaccination requirement did not violate the due process clause because (1) the Court could not "confidently assert that the means prescribed by the state" had "no real or substantial relation to the protection of the public health and the public safety" and (2) the vaccination requirement "cannot be affirmed to be, beyond question, in palpable conflict with the Constitution." *Id.* at 31.

There is no dispute that *Jacobson* remains good law today. And its reasoning is also relevant. During the present pandemic, public health authorities still have a duty to enact reasonable regulations to protect the public welfare, irrespective of the "wishes or convenience of the few" who object. But, because *Jacobson* was decided well before the Supreme Court developed the modern tiers of scrutiny approach to constitutional review, it is not clear how to harmonize *Jacobson* with more recent developments. Courts have split on that issue.

Several courts have concluded that, during a pandemic, *Jacobson*'s two-part test supersedes the usual constitutional framework. *See, e.g., In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020), *judgment vacated on other grounds sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021); *see also In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020). Those courts appear to reason that *Jacobson* involved what would now be understood as the right to bodily integrity. *See generally*

17

*Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997) (citing *Rochin v. California*, 342 U.S. 165 (1952)).  Today, strict scrutiny would be applied in such a case.[10]  Yet in *Jacobson* the Supreme Court relied on its highly deferential two-part test.  Some courts[11] have therefore concluded that *Jacobson*'s test applies to all measures enacted to "combat a public health emergency," even if they infringe on fundamental rights.  *Abbott*, 954 F.3d at 786.

That reasoning has been criticized on several grounds.  Because *Jacobson* was decided before the Supreme Court developed the tiers of scrutiny applicable to constitutional review, the

---

[10]  This court is not holding that *Jacobson* actually implicated the right to bodily integrity.  The case establishing that right, *Rochin*, involved "the forcible extraction of [a defendant's] stomach's contents."  342 U.S. at 172.  That is a very different intrusion from a vaccination.  This court is only noting that decisions such as *Abbott* appear to have concluded that *Jacobson* involved what today would have been considered a fundamental right.

[11]  Defendants maintain that other judges in this district have concluded that *Jacobson* renders inapplicable the usual tiers of scrutiny during a pandemic.  ECF No. 31-1, PageID # 127-30 (citing *Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1143 (D. Haw. 2020), *Bannister v. Ige*, 2020 WL 4209225, at *5 (D. Haw. July 22, 2020), and *Kelley O'Neil's Inc. v. Ige*, 2021 WL 767851, at *7 (D. Haw. Feb. 26, 2021)).  In two of those decisions, however, the court applied strict scrutiny when fundamental rights were at issue.  *Carmichael*, 470 F. Supp. 3d at 1147 ("[B]ased on the record presently before it, the Court finds that the quarantine survives strict scrutiny."); *Bannister*, 2020 WL 4209225, at *6 ("[B]ased on the record presently before it, the Court finds that the quarantine survives strict scrutiny.").  The third case did not involve fundamental rights at all.  *Kelley O'Neil's*, 2021 WL 767851, at *7.  Thus, none of those cases relied on *Jacobson* to fundamentally alter the usual constitutional approach.

question of whether that approach should be set aside in a pandemic simply was not before it. *See generally Delaney v. Baker*, 2021 WL 42340, at *11 (D. Mass. Jan. 6, 2021) (summarizing criticism). More substantively, *Jacobson*'s approach may not afford sufficient protection to constitutional rights. *See, e.g.*, *Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 829 (D. Colo. 2020) ("The court cannot accept the position that the Constitution and the rights it protects are somehow less important, or that the judicial branch should be less vigilant in enforcing them, simply because the government is responding to a national emergency.").

The Fifth Circuit's decision in *Abbott* illustrates the problem with adopting the *Jacobson* approach during a pandemic. *Abbott* upheld a Texas law "temporar[ily banning] . . . all medication abortions and procedural abortions" during the COVID-19 pandemic. *See Abbott*, 954 F.3d at 796-97 (Dennis, J., dissenting). Serious scrutiny was not applied. *See id.* at 800-04. Texas had a history of testing the limits of the constitutional right to an abortion, *see generally Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2299-2301 (2016), and there was an uncertain relationship between banning abortions and protecting the public from COVID-19. *See Abbott*, 954 F.3d at 801-03 (Dennis, J., dissenting). A more searching review may therefore have been warranted. *Id.* at 804 ("In a time where

19

panic and fear already consume our daily lives, the majority's opinion inflicts further panic and fear on women in Texas by depriving them, without justification, of their constitutional rights[.]").

Some courts have therefore attempted to fit *Jacobson* within the modern constitutional framework:

> So the better view is thus that *Jacobson* fits within existing constitutional doctrine. First, *Jacobson* means that most state and local public-health orders that don't implicate fundamental rights will be analyzed under what is now known as the rational basis test. . . .  Second, as noted above, even where heightened scrutiny does apply, *Jacobson* stands for the undeniable proposition that fighting a pandemic is a compelling state interest.
>
> Third, and perhaps less obviously, *Jacobson*'s emphasis . . .  on the need for judicial deference to policymakers' analysis of evolving scientific and medical knowledge helps explain why, as "emergency" restrictions extend beyond the short-term into weeks and now months, courts may become more stringent in their review.  In the court's view, this admonition comes into play in the "tailoring" prong of current constitutional doctrine.  Where fundamental rights are implicated, this requires assessing whether the government's action is the least restrictive means available. In the earliest days of a pandemic or other true emergency, what may be the least restrictive or invasive means of furthering a state's compelling interest in public health will be particularly uncertain, and thus judicial intervention should be rare.  But as time passes, scientific uncertainty may decrease, and [if it does] officials' ability to tailor their restrictions more carefully will increase.

*Denver Bible Church*, 494 F. Supp. 3d at 829–30.

In *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Supreme Court implicitly sided with the line of decisions applying strict scrutiny to law affecting fundamental rights, even during a pandemic.  *Roman Catholic Diocese* involved a challenge to an executive order that placed limits on attendance at religious services.  141 S. Ct. 63, 66-67 (2020).  In striking down the order, the Supreme Court applied strict scrutiny, rather than *Jacobson*'s more deferential standard.[12]  *See id.* at 67; *see also id.* at 71 (Gorsuch, J., concurring) (arguing that *Jacobson* did not create a separate test and noting that neither the majority opinion nor the dissents argued that "anything other than our usual constitutional standards should apply during the current pandemic").  That holding suggests that *Jacobson* does not permit courts to set aside the usual constitutional framework during a pandemic.  Nevertheless, even after *Roman Catholic Diocese*, some district courts have continued to cite *Jacobson* in challenges to regulations involving COVID-19.  *See Forbes v. Cty.*

---

[12]  In his concurrence in *South Bay United Pentecostal Church v. Newsom*, Chief Justice Roberts cited *Jacobson* in passing.  140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring).  In *Roman Catholic Diocese*, however, Chief Justice Roberts rejected assertions that his earlier concurrence had advocated abandoning the application of the tiers of scrutiny.  141 S. Ct. at 75-76 (Roberts, C.J., dissenting).

*of San Diego*, 2021 WL 843175, at \*4 (S.D. Cal. Mar. 4, 2021) (collecting cases).[13]

In any event, this court does not need to resolve this dispute to decide the present motion.  The approach applying tiers of scrutiny is more favorable to Denis.  *See Let Them Play MN v. Walz*, 2021 WL 423923, at \*6 (D. Minn. Feb. 8, 2021) ("[I]f *Jacobson* does establish a different standard of review that applies only during a public-health crisis, that standard would certainly be more deferential than the typical constitutional analysis.").  Even applying the tiers of scrutiny, this court concludes that Denis fails to state a constitutional claim.

## 2.   Denis has not Stated a Claim Under the Free Exercise Clause.

Denis first claims that the Mask Mandates violate the Free Exercise Clause of the First Amendment.[14]  *See* ECF No. 43, PageID # 53.  He appears to contend that because the Mask

---

[13]  *Forbes* distinguished *Roman Catholic Diocese* by noting that the case before it did not involve the Free Exercise Clause. 2021 WL 843175, at \*4.  It is not clear why *Jacobson* should apply in cases involving only certain constitutional rights, but not others.

[14]  Denis also asserts claims under the Religious Freedom Restoration Act.  *See, e.g.*, ECF No. 43, PageID # 254.  In *City of Boerne v. Flores*, however, the Supreme Court held that to the extent RFRA applied to states or municipalities, Congress had exceeded its powers and the law was unconstitutional.  521 U.S. 507, 534-36 (1997); *see also Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015) (explaining that *Boerne* "held unconstitutional the Religious Freedom and Restoration Act as applied to the states").  Having asserted claims against state and local actors, Denis cannot rely on RFRA.

Mandates "infringe[] upon [his] right to breathe oxygen without restriction," which is "in violation [of his] covenant with his Creator of many names," the Mask Mandates inhibit his religious practices.  ECF No. 1, PageID # 11; *see also* ECF No. 43, PageID # 254.  Those allegations do not state a plausible claim for two reasons.

### a.   Denis has not Alleged that the Mask Mandates Place a Substantial Burden on His Practice of Religion.

As an initial matter, Denis has failed to allege the basic elements of a free exercise claim.  "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  "A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* at 1031-32 (internal quotation marks and punctuation omitted).

Denis's allegations do not permit the court to infer that the Mask Mandates place a substantial burden on the exercise of his religion.  The Complaint does not even identify his religion.  It certainly does not describe the tenets of that religion or explain how the Mask Mandates affect any religious

practice.  Without more, this court cannot determine whether the Mask Mandates coerce Denis to act in a way that is contrary to his beliefs.

### b.   The Mask Mandates Survive Rational Basis Review.

Even if Denis had sufficiently alleged a substantial burden on his exercise of religion, he has failed to allege that the Mask Mandates were an irrational response to COVID-19.  "The right to exercise one's religion freely . . . does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075 (9th Cir. 2015); *accord Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Denis has never asserted that the Mask Mandates are not neutral laws of general applicability.  *See Delaney*, 2021 WL 42340, at *13 (concluding that orders requiring all Massachusetts residents to wear masks were neutral and generally applicable). Accordingly, the Mask Mandates only violate the Free Exercise Clause if they fail to survive rational basis review.  *Stormans*, 794 F.3d at 1076, 1084-85.

Under rational basis review, the Mask Mandates are "accorded a strong presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).  The mandates are constitutional if (1) they promote a "legitimate governmental purpose" and (2)

24

there is a "rational relationship between" that purpose and the means chosen by the government. *Id.* at 320.  The second prong does not require the chosen means to promote the government's purpose "with mathematical nicety." *Id.* (internal quotation marks omitted).  "Where there are plausible reasons for [the government's] action, [the] inquiry is at an end." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993)

Ige, Kawakami, and Connors have "no obligation to produce evidence to sustain the rationality" of the Mask Mandates. *See Heller*, 509 U.S. at 320.  When it comes to determining a legislature's purpose, courts may "hypothesize a legitimate governmental purpose." *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014); *see also Beach Commc'ns*, 508 U.S. at 315 ("[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [government].").  Similarly, the government's choice of means "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.*" Id.*

As a result, courts can evaluate the rationality of a statute on a motion to dismiss. *HSH*, 44 F. Supp. 3d at 1008 ("The rational basis test may be applied on a motion to dismiss."); *see also Olson v. California, 2020 WL 6439166*, at *4 (C.D. Cal. Sept. 18, 2020); *Bd. of Trustees of Leland Stanford*

*Junior Univ. v. Cty. of Santa Clara*, 2019 WL 5087593, at *11
(N.D. Cal. Oct. 10, 2019).  It is a plaintiff's burden to plead
facts that demonstrate no conceivable government purpose could
have provided a rational basis for the law.  *See Heller*, 509 U.S.
at 320 ("the burden is on the one attacking the legislative
arrangement to negative every conceivable basis which might
support it" (internal quotation marks and brackets omitted)).

        The Mask Mandates satisfy both prongs of the rational
basis test.  As to the Mandates' goal, the court does not need to
hypothesize a legitimate government purpose.  Both the Governor's
Emergency Proclamation and the Mayor's Emergency Rule explicitly
state that they are intended to limit the spread of COVID-19.
Sixteenth Emergency Proclamation, https://governor.hawaii.gov/
wp-content/uploads/2020/11/2011098-ATG_Sixteenth-Proclamation-Rel
ated-to-the-COVID-19-Emergency-distribution-signed.pdf; Mayor's
Emergency Rule #19 (As Amended), https://www.kauai.gov/Portals/
0/Civil_Defense/EmergencyProclamations/2010134-COK_Mayor%27s%20Em
ergency%20Rule%20No_%2019%2C%20Amendment%20No_%201%20%28certified
%29%20-%20signed.pdf.  There is no question that public officials
may act to protect the public from a disease that has killed more
than three million people worldwide.  *Denver Bible Church*, 494 F.
Supp. 3d at 828 ("there is no question that the State here has a
compelling interest in protecting its citizens from the
SARS-CoV-2 virus"); *see also Jacobson*, 197 U.S. at 25-31.

                                26

The Mask Mandates are a rational measure designed to accomplish that goal.  Indeed, they are the very response recommended by the federal agency responsible for controlling the spread of COVID-19, the CDC.  In the midst of a pandemic, it is clearly reasonable for state and local officials to follow the CDC's guidance.  *See Oakes v. Collier Cty.*, 2021 WL 268387, at *3 (M.D. Fla. Jan. 27, 2021) ("It would be difficult to contend with a straight face that a mask requirement does not bear a rational relation to protecting people's health and preventing the spread of COVID-19.  The Stores do not point to a single court holding otherwise.").

Denis's only argument on this point is a section of his opposition that appears to be copied from another publication.  ECF No. 43, PageID # 262-274.  That section cites authorities that, according to Denis, show that masks do not prevent COVID-19 from spreading.  *Id.*  This court does not find Denis's argument on this point persuasive.[15]  But even if Denis's authorities were reliable, the most Denis could show is that there was a debate among experts concerning the effectiveness of face masks.  That does not mean that it was irrational for state and local

---

[15]  Almost all of Denis's citations are from articles that either predate the pandemic or from articles that were published at the very beginning of the pandemic, when there was some dispute over whether face coverings should be worn in public.  Since that time, however, the overwhelming consensus of experts appears to be that face masks inhibit the transmission of the virus.

officials to follow the CDC, rather than Denis's chosen experts. *See Forbes*, 2021 WL 843175, at \*5 ("Plaintiff's first claim does not plausibly plead that the Mask Rules lack any rational basis. His contentions disputing the scientific basis for the Mask Rules are simply not enough to state a plausible clam that the rules are not rationally related to a legitimate government interest.").

To the contrary, if such a dispute did exist, a rule requiring individuals to wear face coverings while in public would be a sensible response.  If the CDC is right, then face coverings save lives.  And even if the CDC is wrong, Denis cannot plausibly claim that anyone has died as a result of having had to wear a mask.[16]  Thus, even if there were some dispute concerning masks' efficacy, it is hardly irrational for state and local officials to adopt a potentially life-saving measure when there is no commensurate downside.

In sum, the Mask Mandates survive rational basis review.  Because Denis has neither alleged the preliminary elements of a free exercise claim nor shown that the Mask Mandates were irrational, his free exercise claims are dismissed

---

[16]   Both of the Mask Mandates at issue here contain exemptions for those who are medically unable to wear masks. https://governor.hawaii.gov/wp-content/uploads/2020/11/2011098-ATG_Sixteenth-Proclamation-Related-to-the-COVID-19-Emergency-distribution-signed.pdf; https://www.kauai.gov/Portals/0/Civil_Defense/EmergencyProclamations/2010101-COK_Mayor%27s%20Emergency%20Rule%20No_%2019%20%28part%201%29%20-%20signed.pdf.

with leave to amend.  If Denis chooses to revive these claims in an amended complaint, he must, at a minimum, identify the specific religion that he practices and explain how the Mask Mandates prevent him from practicing his religion.  In addition, he must make a plausible showing that the Mask Mandates are unconstitutional under the standards discussed above.

### 3.    Denis has not Stated a Freedom of Speech Claim.

Denis also maintains that the Mask Mandates infringe on the freedom of speech guaranteed by the First Amendment.  ECF No. 43, PageID # 257-58.  That claim fails because the Mask Mandates regulate conduct, not speech, and do not implicate the Free Speech Clause at all.

"The First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *accord HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019).  Two threshold questions determine whether the First Amendment applies in a free speech case. *HomeAway*, 918 F.3d at 685.  Courts must ask (1) "whether conduct with a significant expressive element drew the legal remedy" and (2) whether "the ordinance has the inevitable effect of singling out those engaged in expressive activity."  *Id.* (quoting *Int'l*

29

*Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015)).

Here, the answer to both questions is "no."  First, the Mask Mandates plainly were intended to reduce the spread of COVID-19.  *See id.* (concluding at the motion to dismiss stage that the ordinance at issue was "plainly a housing and rental regulation"); *see also Int'l Franchise Ass'n*, 803 F.3d at 408 ("Seattle's minimum wage ordinance is plainly an economic regulation that does not target speech or expressive conduct."). They require specific conduct: wearing a mask in public.  That conduct does not include a significant expressive element.  *See Minnesota Voters All. v. Walz*, 492 F. Supp. 3d 822, 837 (D. Minn. 2020) (holding that an order requiring face coverings did not target conduct with a significant expressive element); *Stewart v. Justice*, 2020 WL 6937725, at *5 (S.D.W. Va. Nov. 24, 2020) (same); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 236 (D. Md. 2020).  People wearing masks can still speak.

Nor do the Mask Mandates have the effect of singling out those engaged in expressive activity.  The Mask Mandates apply to all individuals in the State of Hawaii or the County of Kauai when they are in public settings, irrespective of whether they seek to communicate with others.

Finally, the Mask Mandates do not impose more than an incidental burden on speech.  To the contrary, individuals can

still engage in expressive activity.  They just have to wear masks while they do.

Denis appears to maintain that the mandates burdened his ability to speak freely because he was arrested at a protest. The Complaint, however, alleges that Denis was in compliance with the Mask Mandates when he was arrested by Officers Kelley and Himongala.  ECF No. 1, PageID # 14.  Setting aside the question of whether those officers violated the Constitution, Denis's allegations show that he *could* publicly communicate his message while still complying with the Mask Mandates, and he himself alleges that he was doing so at the time of his arrest.  Thus, he has not alleged that the Mandates placed even an incidental burden on his ability to speak.

In short, Denis has not sufficiently alleged that the Mask Mandates target speech.  *See Minnesota Voters*, 492 F. Supp. 3d at, 837 (holding that a similar mask mandate did "not implicate the First Amendment at all"); *Stewart*, 2020 WL 6937725, at *5 (same); *Hogan*, F. Supp. 3d at 236 (same).  He has failed to state a claim under the Free Speech Clause.  Denis's free speech claims are dismissed with leave to amend.

### 4. Denis has not Stated a Freedom of Association Claim.

Denis's freedom of association claim fails for the same reason.  "The Supreme Court has held that, consonant with the First Amendment, government may engage in some conduct that

incidentally inhibits protected forms of association." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996). "Though such inhibiting conduct might make it more difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment." *Id.* "To be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.'" *Id.* (quoting *Lyng v. UAW*, 485 U.S. 360, 366, 367 & n.7 108 (1988)).

That rule is necessary to prevent the "'absurd result that any government action that had some conceivable'" impact on the freedom of association would trigger heightened scrutiny under the First Amendment. *See Int'l Franchise Ass'n*,(quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 708 (1986) (O'Connor, J., concurring)) (discussing the related Free Speech Clause). For instance, a statute prohibiting public nudity does not implicate the First Amendment simply because some people do not want to wear clothes when they go outside.

The Mask Mandates do not infringe on the freedom of association for the same reasons. *See Oakes*, 2021 WL 268387, at *8 (characterizing a claim that a mask mandate infringed on the plaintiff's freedom of association as "a head scratcher").  The Mask Mandates allow "[a]nyone [to] freely assemble and associate" as long as "they are socially distanced" or wearing a mask. *Id.*

32

They therefore "[do] not prohibit assemblies," but instead place "a minor restriction on the way they occur." *Id.* They do not place a significant burden on the right to freely associate. Denis's freedom of association claims are dismissed with leave to amend.

### 5. Denis Cannot Pursue a Ninth Amendment Claim.

Denis also contends that the Mask Mandates infringe on the "unenumerated right to breathe oxygen without restriction" guaranteed by the Ninth Amendment. ECF No. 1, PageID # 11. The Ninth Amendment, however "is a rule of interpretation rather than a source of rights." *Froehlich v. State, Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999); *accord Griego v. Cty. of Maui*, 2017 WL 1173912, at *11 (D. Haw. Mar. 29, 2017). It "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). "Because the Ninth Amendment does not guarantee any specific constitutional right, as required for pursuing a constitutional claim under § 1983, [Denis] may not proceed against the Defendants under § 1983 based on the Ninth Amendment." *See Griego*, 2017 WL 1173912, at *11. Denis's Ninth Amendment claims are dismissed with prejudice.

**6.   Denis has not Stated a Claim Under the Fourteenth Amendment.**

Finally, Denis appears to claim that the Mask Mandates violate the Due Process Clause of the Fourteenth Amendment.  *See* ECF No. 1, PageID # 11.  Again, that claim fails because Denis has not alleged that the Mask Mandates were an irrational response to COVID-19.

Governmental action "challenged as violating substantive due process . . . is reviewed for a rational basis so long as it does not implicate a suspect class or impinge on fundamental rights."  *Pakdel v. City & Cty. of San Francisco*, 798 F. App'x 162, 163 (9th Cir. 2020); *accord Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018); *Bowers v. Whitman*, 671 F.3d 905, 917 (9th Cir. 2012).  The "right to breathe oxygen without restriction" is not a fundamental right.  Denis cannot plausibly allege that that right is "deeply rooted in our history and traditions" or "fundamental to our concept of constitutionally ordered liberty."  *Glucksberg*, 521 U.S. at 727; *accord Franceschi*, 887 F.3d at 937 ("The range of liberty interests that substantive due process protects is narrow and only those aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause." (internal quotation marks omitted));  Accordingly, rational basis review applies.  *Forbes*, 2021 WL

34

843175, at *5 (holding that rational basis review applied to a
similar law).  And as this court has already explained, the Mask
Mandates are rationally related to a legitimate government
purpose.  This court dismisses Denis's Fourteenth Amendment
claims with leave to amend.

      In sum, because Denis does not allege that Ige,
Kawakami, or Connors was responsible for the purportedly
unconstitutional conduct of Kelley and Himongala,[17] his claims
against those Defendants depend on his assertions that the Mask
Mandates infringe on his constitutional rights.  Denis's
allegations do not raise a plausible claim that the Mask Mandates
violate any of the constitutional amendments that he has cited.
Accordingly, those claims must be dismissed.[18]

_____

      [17]  To the extent Denis is attempting to hold any of those
Defendants responsible for the conduct of Defendants Kelley and
Himongala, his claims fail for the reasons discussed below.

      [18]  In his opposition, Denis also argues that Defendants Ige
and Connors are "in violation of Hawaiian Kingdom law due to the
illegal occupation and current State of War status as indicated
in . . . the Apology Resolution signed by President William
Jefferson Clinton."  ECF No. 43, PageID # 247.  The Apology
Resolution is not "tantamount to a recognition that the
[Hawaiian] Kingdom continues to exist."  *State v. Lorenzo*, 77
Haw. 219, 221, 883 P.2d 641, 643 (Ct. App. 1994); *cf. Hawaii v.
Off. of Hawaiian Affs.*, 556 U.S. 163, 172 (2009) (rejecting claim
for injunctive relief based on the Apology Resolution).  Denis
cannot assert claims based the Hawaiian Kingdom's laws in federal
court.  *See, e.g.*, *Lorenzo*, 77 Haw. at 221 (identifying no
"factual (or legal) basis for concluding that the Kingdom exists
as a state in accordance with recognized attributes of a state's
sovereign nature"); *State v. French*, 77 Haw. 222, 228, 883 P.2d
644, 650 (Ct. App. 1994) (same); *see also United States v.
Lorenzo*, 995 F.2d 1448, 1456 (9th Cir. 1993) ("The appellants

35

**B.   Denis has failed to state a claim against Chief Raybuck and Chairperson Kaneshiro.**

Finally, Denis seems to allege that Chief Raybuck and Chairperson Kaneshiro are legally responsible for his arrest and the injuries that he allegedly suffered.  He contends that Raybuck is "responsible for the actions of the officers within the police force," and that Kaneshiro is "responsible for protecting the Constitutional rights of [Kauai residents]."  ECF No. 1, PageID # 7.  Those allegations, without more, fail to state a § 1983 claim.

"[V]icarious liability is inapplicable to . . . § 1983 suits."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Consequently, a plaintiff cannot state a claim by alleging that a defendant exercised supervisory responsibility.  *Lacey v. Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012) (internal quotation marks omitted).  Even if a defendant is a supervisor, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 ; *see also Lacey*, 693 F.3d at 916 ("A supervisor can [only] be held liable for the constitutional torts of his subordinates if a sufficient causal connection between the supervisor's wrongful conduct and the

_____

have presented no evidence that the Sovereign Kingdom of Hawaii is currently recognized by the federal government or that they have received any immunity arising from the existence of the Kingdom.").

36

constitutional violation exists."). "Section 1983 requires a connection or link between [the] defendant's [own] actions and the plaintiff's alleged deprivation." *Scaperotta v. Oahu Cmty. Corr. Ctr.*, 2021 WL 969193, at *2 (D. Haw. Mar. 15, 2021).

Denis has not provided that link here. He has not identified any actions attributable to Raybuck or Kaneshiro individually that violated the Constitution or caused him to suffer harm. Denis's § 1983 claims against Raybuck and Kaneshiro must be dismissed.

III.     CONCLUSION.

Denis's claims against Defendants Ige, Kawakami, Connors, Raybuck, and Kaneshiro are dismissed.[19] Denis's Ninth Amendment claims are dismissed with prejudice. The remainder of Denis's claims against the Moving Defendants are dismissed with leave to amend. If Denis opts to submit a Amended Complaint, he must do so no later than June 4, 2021. Any Amended Complaint must be a complete document; it may not simply incorporate the original complaint by reference. If Denis fails to file an Amended Complaint by June 4, 2021, the remainder of this case will proceed against only Kelley and Himongala.

---

[19] Because Denis has failed to state a claim against any of the Moving Defendants, this court does not need to address their assertions that Denis's claims are barred by sovereign immunity at this time.

In responding to any future motions, Denis is again reminded that he must follow all court rules, including those rules governing briefing schedules and those setting page limits. Local Rule 7.4 states that briefs shall not exceed 25 pages in length.  Denis may not file briefs beyond those permitted by court rules.  Any briefs submitted in violation of court rules may be disregarded.

It is so ordered.

DATED: Honolulu, Hawaii, May 12, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Denis v. Ige et al.*, Civil No. 21-00011 SOM-RT, ORDER GRANTING MOTIONS TO DISMISS