IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| :MEGESO-WILLIAM-ALAN: DENIS a.k.a. WILLIAM DENIS,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>DAVID Y. IGE, CLARE E. CONNORS, DEREK S.K. KAWAKAMI, TODD RAYBUCK, DERRICK KELLEY, and JOESPH RUSSELL HIMONGALA,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil NO. 21-00011 SOM-RT<br><br>ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LIVE-STREAM MEDIA COVERAGE |

**ORDER GRANTING MOTIONS TO DISMISS
AND DENYING MOTION FOR LIVE-STREAM MEDIA COVERAGE**

I.　　　　**INTRODUCTION**

On December 5, 2020, Plaintiff Megeso-William-Alan Denis was arrested during a protest in Kapaa, on the island of Kauai. According to Denis, even though he was socially distanced from other people, police officers arrested him because he was not wearing a face mask. Denis claims that during the arrest the officers treated him roughly, and that he suffered injuries as a result. Denis, proceeding *pro se*, has sued two of the police officers involved in his arrest, Defendant Derrick Kelley and Defendant Joseph Russell Himongala. This order does not address Denis's claims against the two officers.

Instead, the present order concerns Denis's claims against four other Defendants (the "Moving Defendants") who did

not physically arrest him.  Denis contends that Defendants David Y. Ige (Hawaii's Governor), Clare E. Connors (Hawaii's Attorney General), and Derek S.K. Kawakami (Kauai's Mayor) violated his constitutional rights by issuing rules that required him to wear a mask in the first place (even though he was allegedly complying with those rules when he was arrested).  Denis also maintains that Defendant Todd Raybuck (Kauai's Police Chief) is responsible for his wrongful arrest because of his position of authority.

On May 12, 2021, this court dismissed Denis's claims against those four defendants but granted Denis leave to amend. This court ruled that Denis had not stated a constitutional claim against Ige, Connors, or Kawakami because he had not plausibly alleged that the Mask Mandates targeted religion, speech, association, or any other fundamental right.  Nor had he alleged that the Mask Mandates were an irrational response to the COVID-19 pandemic.  Finally, he had not stated a claim against Raybuck because he had not claimed that Raybuck did anything to harm him.

In his First Amended Complaint, Denis largely repeats his prior allegations.  While he now contends that he "believes, and has evidence that the wearing of a mask is not only unhealthy but a sign of slavery to another man or government, [and] slavery was abolished in 1865," and that Defendants are "serving a deity known as the Baphomet, Lucifer, Baal, or Satan" by refusing to acknowledge "known effective cures" for COVID-19, *see* ECF No. 63,

2

PageID # 728, 730, those assertions do not remedy the deficiencies this court identified in the Order filed on May 12, 2021.  Denis's claims against the Moving Defendants are dismissed with prejudice.

**II.      BACKGROUND**

        **A.   The COVID-19 Pandemic.**

        "In December 2019, individuals in Wuhan, China identified a novel coronavirus.  In the ensuing months, the disease spread across the world.  The novel coronavirus came to be known as SARS-CoV-2, and the disease that it causes is called COVID-19.  The virus is highly transmissible and is primarily spread through exchange of respiratory droplets emitted when a person talks, breathes, coughs, or sneezes." *Heights Apartments, LLC v. Walz*, 2020 WL 7828818, at *1 (D. Minn. Dec. 31, 2020). According to the Centers for Disease Control and Prevention, by August 26, 2021, more than 38 million cases of COVID-19 had been identified in the United States, and more than 600,000 people have died.  https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited August 26, 2021).

        **B.   Hawaii's Initial Response to the Pandemic.**

        Hawaii's first case of COVID-19 was confirmed on March 6, 2020.  Audrey McAvoy, *Hawaii Records its First Case of New Coronavirus*, A.P. News, March 6, 2020, https://apnews.com/

article/877078a229df18bbbb531524dab3f96c.  On March 16, 2020,
Mayor Kawakami, citing the dangers of the disease, issued an
Emergency Rule prohibiting gatherings of 10 or more people in the
County of Kauai.  Mayor's Emergency Rule #1,
https://www.kauai.gov/Portals/0/Civil_Defense/EmergencyProclamati
ons/Mayor%27s%20Emergency%20Rule%20%231_20200316.pdf.
Shortly thereafter, on March 21, 2020, Governor Ige required
anyone entering the State of Hawaii to self-quarantine for 14
days after arrival.  Second Supplementary Proclamation,
https://governor.hawaii.gov/wp-content/uploads/2020/03/2003152-
ATG_Second-Supplementary-Proclamation-for-COVID-19-signed.pdf.
Two days later, on March 23, 2020, Governor Ige ordered everyone
in the State of Hawaii to shelter in place until April 30, 2020.
Third Supplementary Proclamation, https://governor.hawaii.gov/
wp-content/uploads/2020/03/2003162-ATG_Third-Supplementary-
Proclamation-for-COVID-19-signed.pdf.

### C.    Mask Mandates in Hawaii.

As COVID-19 continued to spread, the medical community
and the Centers for Disease Control and Prevention worked to
identify measures that could limit the virus's transmission.  By
early April 2020, those experts were recommending wearing face
coverings in public.  Specifically, on April 3, 2020, the CDC
recommended "wearing cloth face coverings in public settings
where other social distancing measures are difficult to maintain

4

(e.g., grocery stores and pharmacies) especially in areas of significant community-based transmission."  Centers for Disease Control and Prevention, *Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community-Based Transmission*, April 3, 2020, *available at* https://web.archive.org/web/20200404003200/https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html.[1]

Both Governor Ige and Mayor Kawakami revised their emergency rules to incorporate that recommendation.  On April 13, 2020, Mayor Kawakami, after noting that the CDC "currently recommends wearing cloth face coverings in public settings," issued an order requiring all persons over the age of five on Kauai to wear some form of face covering or mask when outside of their homes.  Mayor's Emergency Rule #6, https://www.kauai.gov/

---

[1]  In ruling on the Moving Defendants' motions, the court can consider the various releases posted on the CDC's website. Courts may take judicial notice of such documents, even if they are currently only available through the Internet Archive's Wayback Machine.  *See, e.g.*, *Brown v. Google LLC*, 2021 WL 949372, at *5 (N.D. Cal. Mar. 12, 2021) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Murphy v. Lamont*, 2020 WL 4435167, at *10 n.14 (D. Conn. Aug. 3, 2020) ("The CDC is the nation's healthcare protection agency. The court takes judicial notice of the CDC's various COVID-19-related postings and guidance."); *Pohl v. MH Sub I, LLC*, 332 F.R.D. 713, 716 (N.D. Fla. 2019) (taking judicial notice of a website archived on the Wayback Machine).  The fact that the CDC actually released the statements cited by the court cannot reasonably be disputed.

Portals/0/Civil_Defense/EmergencyProclamations/Mayor%27s%20
Emergency%20Rule%20%236%2020200413.pdf.  Violations were
punishable by a $5,000 fine or a prison sentence of up to one
year.  *Id.*  Similarly, on April 17, 2020, after recognizing that
the CDC had "recommended wearing cloth face coverings in public
settings where other social distancing measures are difficult to
maintain," Governor Ige updated his shelter-in-place order by
requiring an individual to wear a face mask upon leaving home to
shop at an essential business.  Fifth Supplementary Proclamation,
https://governor.hawaii.gov/wp-content/uploads/
2020/04/2004088-ATG_Fifth-Supplementary-Proclamation-for-COVID-19
-distribution-signed.pdf.  Again, violations were punishable by a
$5,000 fine or a prison sentence of up to one year. *Id.*

As the pandemic progressed, the CDC issued several
additional releases endorsing face masks.  For instance, on July
14, 2020, the CDC issued a press release stating that "cloth face
coverings are a critical tool in the fight against COVID-19 that
could reduce the spread of the disease," and that "[t]here is
increasing evidence that cloth face coverings help prevent people
who have COVID-19 from spreading the virus to others."  Centers
for Disease Control and Prevention, *CDC Calls on Americans to
Wear Masks to Prevent COVID-19 Spread*, July 14, 2020,
https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-
masks.html.

Governor Ige and Mayor Kawakami continued to require individuals to wear face coverings in public settings.  At the times at issue in this case, the following orders (collectively, the "Mask Mandates") were in force, and a violation was again punishable by a fine of $5,000 or a prison sentence of up to one year:

> **State of Hawaii:** All individuals shall wear face coverings over their noses and mouths when in public settings.
>
> The only exceptions to this requirement are:
>
> . . .
>
> J. While outdoors when physical distance of six (6) feet from other individuals (who are not members of the same household/living unit/residence) can be maintained at all times.
>
> **County of Kauai:**  [A]ll persons five (5) years of age or older are required to wear a face covering over their nose and mouth, whether indoors or outdoors, in any setting in which they are in close contact (within 6 feet) of people who don't live in their immediate household.  Face coverings must be worn by employees, customers, and visitors at all times inside any establishment in which close contact may occur.
>
> . . .

Sixteenth Emergency Proclamation, https://governor.hawaii.gov/wp-content/uploads/2020/11/2011098-ATG_Sixteenth-Proclamation-Related-to-the-COVID-19-Emergency-distribution-signed.pdf; Mayor's Emergency Rule #19 (As Amended), https://www.kauai.gov/Portals/0/Civil_Defense/EmergencyProclamations/2010134-COK_Mayor%

7

27s%20Emergency%20Rule%20No_%2019%2C%20Amendment%20No_%201%20%28
certified%29%20-%20signed.pdf.

### D.   Denis's Arrest

On December 5, 2020, Denis attended a protest in Kapaa,
Kauai.  ECF No. 63, PageID # 14.  At the protest, Denis allegedly
held a "free speech sign."  *Id.*  At some point, according to
Denis, several police officers arrived and informed Denis that he
was violating the law because he was not wearing a face mask.
*Id.*  Denis contends that, although he allegedly did not need to
wear a mask because he was more than 18 yards away from any other
protestor, two police officers, Defendants Derrick Kelley and
Joseph Russell Himongala, arrested him.  *Id.*  Denis maintains
that during the arrest he "received bodily harm" from both
officers.  *Id.*

It appears that, at some point, Denis was charged with
having violated the Mask Mandates.  Denis has indicated that the
charges against him were dismissed with prejudice on February 12,
2021.  ECF No. 74, PageID # 904.

### E.   Procedural Background.

On January 6, 2021, Denis filed this action against
Defendants Ige, Connors, Kawakami, Raybuck, Kelley, Himongala,
and Arryl Kaneshiro, the Chair of the Kauai County Council.[2]  The

---

[2]  Denis sued each Defendant in his or her individual and
official capacities.

initial complaint alleged that Defendants were liable under 42 U.S.C. § 1983 because the "unlawful arrest and incarceration of Denis under pretenses effectuated by the Governor's Emergency Proclamation Related to COVID-19" violated Denis's "First, Ninth, and Fourteenth Amendment rights."  ECF No. 1, PageID # 2-3.  His claims appeared to fall into three different categories.

**The Police Officers**.  First, Denis brought claims against the two police officers involved in his arrest, Kelley and Himongala.  Denis alleged that those two officers violated his rights by carrying out "an unjust arrest and incarceration . . . based on the premise that he was failing to abide by the Governor's rules related to COVID-19."  ECF No. 1, PageID # 7.  In short, Denis appeared to be arguing that the two officers wrongfully arrested him without probable cause, and that the manner of the arrest violated the Fourth Amendment because the officers used excessive force.  *Id.* at 16.

**State and County Officials**.  Second, Denis brought claims against the State and County officials involved in promulgating the Mask Mandates.  Denis alleged that Governor Ige and Mayor Kawakami issued the proclamations, supplements, and executive orders at issue, and that Attorney General Connors "formally approved" those orders.  *Id.* at 5-6.  Denis appeared to be claiming that those three Defendants violated his constitutional rights by issuing the Mask Mandates, because,

9

among other things, the mandates impermissibly burdened his "unenumerated right to breathe oxygen without restriction." *Id.* at 11.

        **Other County Officials.**  Finally, Denis brought claims against two other Kauai officials, Chief of Police Todd Raybuck and County Council Chairperson Arryl Kaneshiro.  Denis appeared to be alleging that Raybuck and Kaneshiro were indirectly responsible for his arrest.  He stated that Raybuck was "responsible for the actions of officers within the police force, including those actions which unduly violated [his] constitutional rights," and that Kaneshiro's "failure . . . to create long term policy that represents the will of the people [was] equivalent to complicity with the actions of the other Defendants[.]"  *Id.* at 6-7.

        Ige, Connors, Kawakami, Raybuck, and Kaneshiro filed motions to dismiss the initial complaint.[3]  Ige, Kawakami, and Connors argued that the Mask Mandates did not infringe on any constitutional right, and that the claims against them turned on that assertion.  *See* ECF Nos. 24, 31, 48.  Raybuck and Kaneshiro contended that they could not be liable because Denis had not alleged that they had done anything that caused him harm.  *See* ECF Nos. 21, 24.

---

        [3]  Officers Kelley and Himongala did not move to dismiss and instead filed answers.

10

On May 12, 2021, this court granted the motions to
dismiss.  ECF No. 62.  This court dismissed the claims against
Ige, Connors, and Kawakami, because Denis had failed to state a
claim that the Mask Mandates violated the First, Ninth, or
Fourteenth Amendment.  ECF No. 62, PageID # 700-13.
Specifically, this court held that (1) because the Mask Mandates
were neutral laws of general applicability, rational basis review
applied to Denis's free speech claims, *id.* at 702; (2) Denis had
not alleged that the Mask Mandates infringed on his freedom of
speech or association, *id.* at 707-711; (3) Denis could not bring
a cause of action under the Ninth Amendment, *id.* at 711; (4)
because Denis had not alleged that the Mask Mandates impinged on
any fundamental rights, rational basis review applied to his Due
Process claims, *id.* at 712-13; and (5) the Mask Mandates were not
an irrational response to the COVID-19 pandemic.  *Id.* at 702-07.
This court also held that Denis had not stated a claim against
Raybuck or Kaneshiro.  *Id.* at 714-15.  This court dismissed
Denis's Ninth Amendment claims with prejudice, but granted him
leave to amend the remaining claims.  *Id.* at 715.

On June 4, 2021, Denis filed the operative First
Amended Complaint.  ECF No. 63.  Denis dropped his claims against
County Council Chairperson Kaneshiro, but essentially repeated
his claims against Ige, Connors, Kawakami, Raybuck, Kelley, and

Himongala.[4]  *See generally id.*  He also added several new allegations in an apparent attempt to bolster his claims that the Mask Mandates violate the federal and state constitutions. Referring to "defending and protecting his natural Birthrights and covenant with the Creator of many names," he asserts that based on his "religious belief systems, sound intellectual judgment, emotional security, and physical well-being [he] believes, and has evidence that the wearing of a mask is not only unhealthy but a sign of slavery to another man or government, but slavery was abolished in 1865."  ECF No. 63, PageID # 728.  He also contends that by issuing Mask Mandates "when known effective cures for the alleged 'public health emergency' exist," Defendants have demonstrated that they are "serving a deity known as the Baphomet, Lucifer, Baal, or Satan."[5]  *Id.* at 730.

Denis seeks "a combined restitution of six-hundred and thirty-two million dollars" from Defendants collectively, in

---

[4]  The First Amended Complaint repeats Denis's Ninth Amendment claims even though this court already dismissed those claims with prejudice.  ECF No. 62, PageID # 715.  Because this court precluded Denis from bringing those claims again, it will not consider them further.

[5]  In both the First Amended Complaint and his opposition brief, Denis repeatedly asserts that Defendants have violated various criminal laws.  ECF No. 63, PageID # 736-37; ECF No. 74, PageID # 904, 907-10, 915-17.  Denis cannot enforce those criminal laws in his civil action.  *See generally Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, 2020 WL 3490027, at *2 (D. Haw. June 26, 2020) ("courts consistently dismiss civil causes of action based on criminal statutes").

addition to payment of his medical bills and legal costs.  *Id.* at 737.  He also requests "a public apology from each of the Defendants," an injunction preventing Defendants from enforcing the Mask Mandates, and declaratory relief stating that the Mask Mandates are unconstitutional.  *Id.* at 737-38.

Governor Ige, Attorney General Connors, Mayor Kawakami, and Chief Raybuck have moved to dismiss the First Amended Complaint on the grounds that some of Denis's claims against them are barred by sovereign immunity and that Denis has again failed to state a claim against them.  On the present motions, only the claims against Ige, Kawakami, Connors, and Raybuck are at issue.

**III.      LEGAL STANDARD.**

**A.      Rule 12(b)(1).**

Under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction.  An attack on subject matter jurisdiction "may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction[,]" while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*

Defendants appear to be bringing a facial attack.  In deciding such a motion, a court must assume the facts alleged in

the complaint to be true and construe them in the light most favorable to the nonmoving party. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). However, courts "do not accept legal conclusions in the complaint as true, even if 'cast in the form of factual allegations.'" *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (emphasis in original) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).

### B.   Rule 12(b)(6).[6]

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of a complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of

---

[6]   In the Ninth Circuit, "[i]t is not entirely clear whether an Eleventh Amendment challenge should be analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Monet v. Hawaii*, 2011 WL 2446310, at *3 (D. Haw. June 14, 2011). But, in this case, "whether the court examines Eleventh Amendment immunity under Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim makes no difference, as those standards are essentially the same for purposes of this motion." *Id.*

law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

IV.      **ANALYSIS.**

  A.   **Denis's Claims Against Ige and Connors in their Official Capacities are Barred by the Eleventh Amendment**

    As an initial matter, Ige and Connors argue that the doctrine of sovereign immunity precludes any claims for damages Denis has brought against them in their official capacities.  ECF No. 843-45.  Because that argument implicates this court's power to hear the case, this court addresses it at the outset.  In general, the "Eleventh Amendment bars actions against states, state agencies, or departments of a state unless a state waives sovereign immunity or Congress exercises its power to override the immunity."  *Trotter v. Hawaii*, 2018 WL 912255, at *4 (D. Haw. Feb. 15, 2018).  Denis has not asserted that the State of Hawaii has waived its sovereign immunity.

    However, under the doctrine first set forth in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may proceed against individual state officials in their official capacities under certain circumstances.  *See Trotter*, 2018 WL 912255, at *4.  *Ex parte Young* ensures that the federal courts have the power to put a stop to ongoing violations of federal law.  *See Papasan v. Allain*, 478 U.S. 265, 276-78 (1986).  The doctrine has been "tailored to conform as precisely as possible" to that goal.  *Id.* at 277.  It permits plaintiffs to seek prospective relief, *i.e.*, relief that seeks to end continuing violations, but not

16

retrospective relief.  Thus, permissible suits generally assert that "a violation of federal law by a state official is ongoing," whereas prohibited suits allege that "federal law has been violated at one time or over a period of time in the past." *Id.* at 277-78.

　　　　To the extent that Denis seeks damages, his claims are the paradigmatic example of a request for retrospective relief that is precluded by the Eleventh Amendment.  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."); *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988) ("Put simply, the eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages.").  Any claims for damages against Ige and Connors in their official capacities are barred by the Eleventh Amendment.  While Denis can bring claims against those defendants for injunctive and declaratory relief, those claims fail for the reasons discussed below.

> **B.   Denis Fails to State a Claim Against Defendants Ige, Connors, and Kawakami.**

　　　　The constitutionality of the Mask Mandates is central to several of Denis's claims.  Denis appears to argue that he is

entitled to damages because Governor Ige and Mayor Kawakami violated his constitutional rights by issuing the Mask Mandates, and that Attorney General Connors participated in the violation by approving the Governor's Emergency Proclamation.  ECF No. 63, PageID # 721-23.  Denis asks this court to declare the Mask Mandates unconstitutional and to issue an injunction preventing Defendants from enforcing them.  *Id.* at 738.

In its Order of May 12, 2021 ("May Order") this Court dismissed Denis's claims against Ige, Connors, and Kawakami because Denis had failed to state a constitutional claim under the First, Ninth, or Fourteenth Amendments.  ECF No. 62.  While this court granted Denis leave to amend his First and Fourteenth Amendment claims, Denis's First Amended Complaint does not remedy the deficiencies identified earlier by this court.

## 1.   Denis Fails to State a Claim Under the Free Exercise Clause.

Denis first claims that the Mask Mandates violate the Free Exercise Clause of the First Amendment.  *See* ECF No. 63, PageID # 728.  In its May Order, this court dismissed Denis's earlier Free Exercise claims for two reasons: (1) Denis had not plausibly alleged that the Mask Mandates placed a substantial burden on the exercise of his religion, and (2) Denis had not plausibly alleged that the Mask Mandates were an irrational response to the COVID-19 pandemic.  ECF No. 62, PageID # 700-07.

18

This court need not address the first issue again.[7]  Even if Denis has now alleged that the Mask Mandates burden his practice of religion, the mandates survive rational basis review.

As an initial matter, Denis does not challenge the Moving Defendants' assertion that the Mask Mandates are neutral laws of general applicability.  *See* ECF No. 64-1, PageID # 751; ECF No. 70-1, PageID # 839.  Accordingly, rational basis review applies to Denis's Free Exercise challenge.  *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1074, 1084-86 (9th Cir. 2015); *see also Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) ("'Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs.  The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities.'" (quoting *Minersville School Dist. Bd. of Ed. v. Gobitis*, 310 U.S. 586,

---

[7]   In that regard, Denis now alleges that his "Covenant, or primary contact, is with the highest authority known as Source energy, Creator, God, Ke Akua, and many other names," and that he "is in a state of sovereignty, as his Creator is sovereign, with the protection of freedom of choice to wear or not wear a mask moving forward in life."  ECF No. 63, PageID # 728-29.  He says that while his "religious beliefs are not of a 'Religion,' as they are not adopted from any doctrine," they are "founded on [his] personal connection with [his] Creator and this relationship is different from all other sentient beings."  *Id.* at 729.

594-595 (1940)).  The Mandates are constitutional if (1) they promote a "legitimate governmental purpose" and (2) there is a "rational relationship between" that purpose and the means chosen by the government.  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).  Ige, Kawakami, and Connors have "no obligation to produce evidence to sustain the rationality" of the Mask Mandates.  *See id.* at 320.  It is a plaintiff's burden to plead facts that demonstrate no conceivable government purpose could have provided a rational basis for the law.  *See id.*

This court has already held that protecting the public from the spread of COVID-19 is a legitimate governmental purpose, and that the Mask Mandates are a rational means of accomplishing that goal.  ECF No. 62, PageID # 704-05.  Denis's amended complaint offers only one new allegation on this issue: that the Mask Mandates are unnecessary because "known effective cures" for COVID-19 exist.  ECF No. 63, PageID # 730.  In support of that assertion, the First Amended Complaint cites articles discussing hydroxychloroquine, ivermectin, and budesonide, *id.*, although in his opposition Denis also cites "azithromycin, vitamin C, and zinc."  ECF No. 74, PageID # 911.

Ige, Connors, and Kawakami could have rationally concluded that many of the treatments that Denis points to are ineffective.  For instance, this court takes judicial notice of an FDA decision on June 15, 2020 (before Defendants issued the

operative Mask Mandates) in which the FDA "revoked the emergency use authorization that allowed chloroquine phosphate and hydroxychloroquine sulfate . . . to be used to treat certain hospitalized patients with COVID-19" because "chloroquine and hydroxychloroquine are unlikely to be effective in treating COVID-19."  Food and Drug Administration, *Coronavirus (COVID-19) Update: FDA Revokes Emergency Use Authorization for Chloroquine and Hydroxychloroquine*, https://www.fda.gov/ news-events/press-announcements/coronavirus-covid-19-update-fda-revokes-emergency-use-authorization-chloroquine-and (June 15, 2020).  It would have been reasonable for Defendants to follow the FDA's guidance.[8]

It is certainly true that there are treatments that may improve the clinical outcomes of patients who contract COVID-19. For instance, the National Institute of Heath recommends using certain corticosteroids[9] to treat patients hospitalized with COVID-19.  National Institute of Health, *Therapeutic Management of Hospitalized Adults With COVID-19*, https://www.covid19

---

[8]  The FDA has similarly indicated that ivermectin should not be used to treat COVID-19.  *See, e.g.,* Food and Drug Administration, *Why You Should Not Use Ivermectin to Treat or Prevent COVID-19*, https://www.fda.gov/consumers/ consumer-updates/why-you-should-not-use-ivermectin-treat-or-prevent-covid-19.

[9]  Budesonide, one of the treatments cited by Denis, appears to be a corticosteroid, although the NIH does not specifically recommend using budesonide to treat COVID-19.

21

treatmentguidelines.nih.gov/management/clinical-management/ hospitalized-adults--therapeutic-management/ (July 8, 2021). Corticosteroids, however, are far from a "cure."[10]   *See id.*

In any event, the effectiveness of various treatments for COVID-19 is beside the point.  It is not irrational for cars to have seatbelts and airbags, even if they both provide protection from the same kinds of harm.  It is equally reasonable for public officials to seek to provide the public with multiple layers of protection when confronted with a pandemic that has killed more than 600,000 people in the United States.  The Mask Mandates and pharmaceutical treatments are two such layers of protection.  Denis's new allegations concerning "cures" for COVID-19 do not change this court's conclusion that the Mask Mandates were a rational response to the present pandemic. Denis's Free Exercise claims are dismissed with prejudice.

**2.   Denis Fails to State a Claim that the Mask Mandates Impinge on His Freedom of Speech or Association.**

Denis also contends that the Mask Mandates violate the Free Speech Clause and the Free Association Clause of the First

---

[10]   Shortly after the pandemic began, doctors began treating COVID-19 patients with dexamethasone, a corticosteriod.   *See* Heidi Ledford, *Coronavirus Breakthrough: Dexamethasone is First Drug Shown to Save Lives*, Nature, June 16, 2020, https://www.nature.com/articles/d41586-020-01824-5.   COVID-19 has nevertheless continued to kill people in the United States.   *See* Centers for Disease Control and Prevention, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited August 26, 2021).

Amendment.  *See* ECF No. 63, PageID # 720.  In its May Order, this court dismissed Denis's freedom of speech and freedom of association claims because Denis had not plausibly alleged that the Mask Mandates imposed anything more than incidental burdens on speech or association.  ECF No. 62, PageID # 707-11.  The First Amended Complaint does not include any new allegations that suggest otherwise.  Denis's freedom of speech and freedom of association claims are dismissed with prejudice.

### 3.  Denis Fails to State a Claim Under the Fourteenth Amendment.

Denis next appears to claim that the Mask Mandates violate the Due Process Clause of the Fourteenth Amendment.  *See* ECF No. 63, PageID # 733.  In its May Order, this court dismissed Denis's due process claim because (1) Denis had not plausibly alleged that the Mask Mandates infringed on any of his fundamental rights, and (2) Denis had not plausibly alleged that the Mask Mandates were an irrational response to the COVID-19 pandemic.  ECF No. 62, PageID # 712-13.  As stated previously, none of the allegations in the First Amended Complaint suggests that Ige, Connors, or Kawakami acted irrationally.

Nor has Denis plausibly alleged that the Mask Mandates affected his fundamental rights.  Denis's only new allegation on this point is the assertion that with his "religious belief systems, sound intellectual judgment, emotional security, and physical well-being [he] believes, and has evidence that the

23

wearing of a mask is not only unhealthy but a sign of slavery to another man or government, but slavery was abolished in 1865." ECF No. 63, PageID # 728.

Denis both trivializes the horrors of slavery and fundamentally misconstrues the nature of the Mask Mandates. Slavery involved the forced subjugation and brutal exploitation of human beings.  The Mask Mandates, by contrast, require individuals to accept an inconvenience so that they can protect themselves and others from a deadly disease.  The two are not remotely comparable.  The Mask Mandates do not infringe on fundamental rights.  Denis's Fourteenth Amendment claims are dismissed with prejudice.

### 4.   Denis Fails to State a Claim Under the Hawaii Constitution.

Finally, the First Amended Complaint appears to allege, for the first time, that the Mask Mandates violate sections 2, 4, 5, and 8 of article I of the Hawaii constitution.  ECF No. 63, PageID # 734-35.  Those claims have no more merit than Denis's claims based on the federal Constitution.

As an initial matter, the Moving Defendants maintain that Denis's claims based on the Hawaii constitution should be dismissed because "Hawaii courts have declined to recognize a direct cause of action for violation of rights guaranteed under the provisions of the Hawaii Constitution."  ECF No. 70-1, PageID # 847; *see also* ECF No. 64-1, PageID # 759.  This court does not

treat that assertion as dispositive here.  Judges in this district have "declined to recognize a private cause of action *for damages* for violations of rights guaranteed under the state constitution."[11]  *Ilae v. Tenn*, 2013 WL 4499386, at *17 (D. Haw. Aug. 20, 2013) (emphasis added) (refusing to recognize a private cause of action for damages, but reaching the merits of the plaintiffs' claims for declaratory and injunctive relief); *see also, e.g.*, *Kaahu v. Randall*, 2018 WL 472996, at *7 (D. Haw. Jan. 18, 2018) ("Courts in Hawaii have declined to recognize a direct private cause of action for damages resulting from the violation of rights guaranteed under the provisions of the Hawaii Constitution."); *Davis v. Abercrombie*, 2014 WL 3809499, at *16 (D. Haw. July 31, 2014) ("[T]he Hawaii Supreme Court would not recognize a claim for damages arising directly under the Hawaii State Constitution.").  The First Amended Complaint includes claims for declaratory and injunctive relief.  Even if this court concluded that Denis could not pursue a private right of action for damages,[12] Moving Defendants have failed to establish that

---

[11]  In federal cases, it is well established that even if plaintiffs cannot bring a claim for damages, "[c]ertain provisions of the [federal] constitution give rise to equitable causes of action."  *Sierra Club v. Trump*, 963 F.3d 874, 888 (9th Cir. 2020), *vacated on other grounds sub nom. Biden v. Sierra Club*, 2021 WL 2742775 (U.S. July 2, 2021).

[12]  This court notes that in its recent decision in *Gordon v. Maesaka-Hirata*, the Hawaii Supreme Court addressed a due process claim brought directly under article I, section 5 of the Hawaii constitution.  143 Hawaii 335, 358, 431 P.3d 708, 731

this court may not reach the merits of Denis's claims to resolve this motion.

In any event, Denis's claims based on the state constitution fail for the same reasons as his federal claims.[13] Article I, section 4 of the Hawaii constitution is analogous to the First Amendment.  It states that "[n]o law shall be enacted respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press or the right of the people peaceably to assemble and to petition the government for a redress of grievances."  Denis fails to state a claim under that section for the same reasons that he fails to state a federal First Amendment claim.

As discussed above, the Mask Mandates do not infringe on the freedoms of speech or assembly.  Moreover, it appears that in considering free exercise claims based on article I, section 4, Hawaii courts would apply rational basis review to neutral laws of general applicability.  *See State v. Armitage*, 132 Hawaii

---

(2018).  The court held that the plaintiff had established a due process violation, but that Hawaii had not waived its sovereign immunity for damages, and that the injunctive relief that the plaintiff sought was "unnecessary."  *Id.* at 359-60, 431 P.3d at 732-33.  The reasoning in *Gordon* suggests that the Hawaii Supreme Court might recognize a private cause of action for violations of the Hawaii constitution, even if a damages claim might be barred by sovereign immunity.

[13]  Even after this court asked for supplemental briefing on this issue, Denis did not identify any relevant differences in the legal standards applied under the federal and state constitutions.  *See generally* ECF No. 93.

36, 59, 319 P.3d 1044, 1067 (2014) (applying strict scrutiny in a free exercise case only after determining that the challenged law was not generally applicable); *see also State v. Harris*, 2013 WL 2156056 (Haw. Ct. App. 2013) (rejecting a "claim based on the free exercise clauses of the U.S. and Hawaii Constitutions" because the law at issue was "a neutral law of general applicability"); *State v. Kimmel*, 2009 WL 154478, at *2-3 (Haw. Ct. App. 2009) (rejecting a claim based on the "right to the free exercise of . . . religion . . . under the Hawaii Constitution" because the challenged law was "a neutral law of general applicability").  To reiterate, Denis does not dispute that the Mask Mandates are neutral laws of general applicability, and he has not plausibly alleged that the mandates were an irrational response to the COVID-19 pandemic.

Similarly, Denis's due process claims based on sections 2[14] and 5[15] of article I of the Hawaii constitution are dismissed

---

[14]   Article I, section 2 of the Hawaii constitution states that "[a]ll persons are free by nature and are equal in their inherent and inalienable rights.  Among these rights are the enjoyment of life, liberty and the pursuit of happiness, and the acquiring and possessing of property.  These rights cannot endure unless the people recognize their corresponding obligations and responsibilities."

[15]   Article I, section 5 of the Hawaii constitution states that "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry."

27

for the same reasons as his due process claims under the Fourteenth Amendment. Hawaii courts addressing claims under sections 2 and 5 apply the rational basis standard if the challenged statute does not affect fundamental rights. *Washington v. Fireman's Fund Ins. Companies*, 68 Haw. 192, 202, 708 P.2d 129, 136 (1985) ("Because no fundamental rights or suspect classifications are involved, the rational basis standard is used. Only if there is no rational basis to sustain the challenged statutes will there be a violation of due process under U.S. Const. amend. XIV and Haw. Const. art. I, § 5."); *Maeda v. Amemiya*, 60 Haw. 662, 669, 594 P.2d 136, 141 (1979) (applying rational basis standard in case involving article I, section 2 because fundamental rights were not at issue); *State v. Kantner*, 53 Haw. 327, 332, 493 P.2d 306, 309 (1972) (rational basis standard applies in cases that do not involve issues of "fundamental liberty").

Moreover, the Hawaii Supreme Court, like the United States Supreme Court, has defined fundamental rights as those rights that are "'implicit in the concept of ordered liberty." *In re Doe*, 99 Hawaii 522, 533 n.14, 57 P.3d 447, 458 n.14 (2002) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). Because Denis has not plausibly alleged that the Mask Mandates impinge on his fundamental rights, or that the Mask Mandates were an irrational response to the COVID-19 pandemic, his claims under

28

sections 2 and 5 of article I of the Hawaii constitution are dismissed as well.[16]

### 5. Denis Fails to State A Claim Based on the "Expiration" of the State of Emergency.

Finally, Denis's sur-reply, filed in contravention of this court's local rules restricting the briefs allowed without leave of court, includes language that could be interpreted as asserting that, because any state of emergency declared by the Governor "expired sixty days after being written and implemented," Ige and Kawakami lacked the authority to promulgate the Mask Mandates. ECF No. 85, PageID # 974, 976. By failing to raise that argument in a timely manner, Denis has waived it. Because this court is dismissing the claims against Ige, Connors, and Kawakami with prejudice, however, this court addresses Denis's argument to make it clear that any amendment would be futile.

---

[16] There is no federal analogue to article I, section 8 of the Hawaii constitution, which states that "[n]o citizen shall be disfranchised, or deprived of any of the rights or privileges secured to other citizens, unless by the law of the land." This case, however does not involve a claim that Denis has been disfranchised or treated differently from other citizens. Similarly, in his opposition, Denis cites article XIV, *see* ECF No. 74, PageID # 912-914, which provides, *inter alia*, that "each political subdivision and the constitutional convention shall adopt a code of ethics" and that each code of ethics shall be administered by an ethics commission. This case does not involve an ethics commission.

Denis's claims appear to be based on the language of Haw. Rev. Stat. § 127A-14, which permits the Governor to declare a state of emergency.   That statute provides:

> (a) The governor may declare the existence of a state of emergency in the State by proclamation if the governor finds that an emergency or disaster has occurred or that there is imminent danger or threat of an emergency or disaster in any portion of the State.
>
> (b) A mayor may declare the existence of a local state of emergency in the county by proclamation if the mayor finds that an emergency or disaster has occurred or that there is imminent danger or threat of an emergency or disaster in any portion of the county.
>
> (c) The governor or mayor shall be the sole judge of the existence of the danger, threat, or circumstances giving rise to a declaration of a state of emergency in the State or a local state of emergency in the county, as applicable. This section shall not limit the power and authority of the governor under section 127A-13(a)(5).
>
> (d) A state of emergency and a local state of emergency *shall terminate automatically sixty days after the issuance of a proclamation of a state of emergency* or local state of emergency, respectively, or by a separate proclamation of the governor or mayor, whichever occurs first.

(Emphasis added.)

Denis seems to be saying that the Governor's and Mayor's authority to issue the Mask Mandates depends on the existence of a state of emergency, *see generally* Haw. Rev. Stat. §§ 127A-12, 127A-13, and that the Mask Mandates became

inoperative after 60 days, when the state of emergency automatically terminated.  In response, the State contends that "HRS § 127A-14(d) does not limit the Governor to just one 60-day state of emergency," and that the Governor has the power to issue supplemental declarations extending the emergency period if necessary.  ECF No. 92, PageID # 1011.  Several state trial courts have agreed with the State.  *For Our Rights v. Ige*, Civil No. 5CCV-20-0000091, slip op. at 1-2 (Haw. Cir. Ct. Nov. 19, 2020); *Partal v. Ige*, Civil No. 3CCV-20-0000277, slip op. at 5-9 (Haw. Cir. Ct. Oct. 15, 2020).

Denis's argument raises issues of statutory interpretation.  Under Hawaii law, "statutory construction is guided by the following well established principles":

> [O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative

31

> intent. One avenue is the use of legislative
> history as an interpretive tool.
>
> The . . . court may also consider the reason
> and spirit of the law, and the cause which
> induced the legislature to enact it to
> discover its true meaning.

*Nakamoto v. Kawauchi*, 142 Hawaii 259, 268, 418 P.3d 600, 609 (2018).  Based on those principles, this court agrees with the State's construction of section 127A-14.

The language of the statute supports the State. Section 127A-14 states that the Governor may declare a state of emergency *whenever* he or she finds that an emergency or disaster has occurred.  There is no prohibition on supplementary or successive proclamations.  Thus, the plain language of the statute suggests that if the Governor finds that a disaster is still ongoing after 60 days, the Governor can issue a supplemental proclamation to restart the 60-day period.  *See H's Bar, LLC v. Berg*, 2020 WL 6827964, at *5 (S.D. Ill. Nov. 21, 2020) (construing a similar Illinois statute and concluding that the statute's "plain language . . . permits the Governor to issue multiple and successive disaster proclamations and to exercise emergency powers for additional . . . periods, so long as a disaster continues to exist").

Moreover, even if the language indicating that the state of emergency shall terminate after 60 days did introduce an element of ambiguity, the legislative purposes also favor the

State's interpretation.  The legislature enacted chapter 127A to
"protect the public health, safety, and welfare, and to preserve
the lives and property of the people of the State" when disasters
affect the state.  Haw. Rev. Stat. § 127A-1.  It instructed
courts to construe the chapter "liberally" to "effectuate its
purposes."  *Id.*  In some circumstances, it is necessary to give
the Governor the authority to extend a declaration of emergency
beyond 60 days to protect the public health, safety, and welfare.
After all, while "some types of disasters, such as a storm or
earthquake, run their course in a few days or weeks," others "may
cause havoc for months or even years."  *Cassell v. Snyders*, 458
F. Supp. 3d 981, 1002 (N.D. Ill. 2020).  It would make no sense
to give the Governor the authority he needs to respond to
protracted conditions of emergency and yet to impose a cutoff of
that authority while a state of emergency is ongoing.  This is
particularly true when, as in Hawaii, the legislature is in
regular session for only a few months each year.

        In other cases, plaintiffs have raised concerns that
the Governor could use supplemental or successive declarations of
emergency as a "power grab."  *See, e.g.*, *Partal*, slip op. at 7.
In essence, these plaintiffs have asserted that the legislature
intended to use the 60-day limit on the duration of an emergency
of section 127A-14 to force the Governor to involve the
legislature after the expiration of the 60-day period.  Under

this analysis, even if, at its inception, an emergency required an immediate response, after 60 days, consultation with the legislature should be possible.

This court finds that argument unpersuasive.  Some emergencies will not permit prompt legislative action.  For instance, during times of armed conflict, or a disaster that closes the Honolulu airport, it may be impossible for the legislature to meet.  Nothing in chapter 127A suggests that the legislature would have wanted to leave the Governor powerless in those circumstances.

That is particularly true because the legislature is not without recourse if the Governor abuses the power conveyed by chapter 127A.  Under those circumstances, the legislature could repeal section 127A-14 entirely, or it could amend the statute to prevent the Governor from declaring an emergency based on the then-current conditions.  Because the legislature has other tools to rein in abuses of power, there is no need for an interpretation of section 127A-14 that limits the Governor's power to respond to a genuine emergency (such as the present pandemic).  Indeed, if the legislature believed that Governor Ige had overstepped his bounds by extending his declaration that COVID-19 constitutes an emergency, the legislature could have enacted either amendment at some point in the last year and a half, during which two legislative sessions have concluded.  The

34

legislature has not done that, although such amendments were considered.  *See* H.B. No. 103, 31st Leg., 2021 Sess. (Haw. 2021).

In short, this court agrees with the State.  Because section 127A-14 permits the Governor to issue supplemental or successive declarations of emergency, his authority to issue the Mask Mandates did not expire in May 2020.  Denis does not state a plausible claim based on that argument.

Because Denis does not allege that Ige, Connors, or Kawakami was responsible for the purportedly unconstitutional conduct of Kelley and Himongala,[17] his claims against Ige, Connors, and Kawakami depend on his assertions that the Mask Mandates infringe on his constitutional rights or that the Governor and Mayor lacked the authority to issue the Mask Mandates.  Denis's allegations do not raise a plausible claim in that regard.  His claims against Ige, Kawakami, and Connors are dismissed with prejudice.

## C.   Denis Fails to State a Claim Against Chief Raybuck.

Finally, Denis seems to allege that Chief Raybuck is legally responsible for his arrest and the injuries that he allegedly suffered.  In its earlier order, this court dismissed Denis's claims against Raybuck because Denis had not identified

---

[17]   To the extent Denis is attempting to hold any of those Defendants responsible for the conduct of Defendants Kelley and Himongala, his claims fail for the reasons discussed below.

35

any actions attributable to Raybuck individually that violated the Constitution or caused him to suffer harm.  ECF No. 62, PageID # 714-15.  Such allegations are again absent from the First Amended Complaint.

The First Amended Complaint alleges that Raybuck is responsible for Denis's injuries because he failed "to act to protect the rights of the Plaintiff when notified by written affidavit of his liability in executing actions against the Plaintiff that violate his God-given rights, including enforcing unlawful mandates promulgated by Defendant Ige."  ECF No. 63, PageID # 723; *see also id.* at 726 ("Defendant Raybuck was notified of liability in failing to uphold his oath to protect the people of Kauai, including the Plaintiff, from unlawful, unwarranted mandates, through written affidavit, yet chose to remain silent and failed to act accordingly.").  Denis has again failed to identify an *action* attributable to Raybuck that violated a constitutional right or caused him to suffer harm. None of Denis's allegations suggests that Raybuck had a legal duty to respond to his "written affidavit."  Denis does not state a claim simply by warning an official of liability.  There must still be a legally cognizable basis for liability.

Moreover, Denis appears to be saying that Raybuck is liable for enforcing an unconstitutional law.  As stated previously, Denis has not stated a claim of any

36

unconstitutionality.  Denis's claims against Raybuck are dismissed with prejudice.[18]

## V.      CONCLUSION.

The motions to dismiss filed by Defendants Ige, Kawakami, Connors, and Raybuck are granted.  This is the second time this court has dismissed Denis's claims against those Defendants, and this court determines that granting Denis leave to amend would be futile.  Denis's claims against Defendants Ige, Kawakami, Connors, and Raybuck are dismissed with prejudice.  The remainder of this case will proceed against only Kelley and Himongala.

---

[18]  This court also denies Denis's Motion for Live-Stream Media Coverage of Trial.  As an initial matter, Denis's motion is premised on the importance of the COVID-19 pandemic.  ECF No. 79, PageID # 951.  With the dismissal of Denis's claims against Ige, Connors, Kawakami, and Raybuck, this case no longer involves the validity of the Mask Mandates or COVID-19.  Denis's remaining claims against Kelley and Himongala are straightforward excessive force claims.  The dismissal of Ige, Connors, Kawakami, and Raybuck therefore undercuts the basis for Denis's motion.

In any event, live video coverage of any trial in this matter is not appropriate.  The Supreme Court has indicated that court proceedings should not be broadcast when the cases are "high profile" or "involve witnesses." *Hollingsworth v. Perry*, 558 U.S. 183, 198 (2010).  Denis is asserting that proceedings should be broadcast because this case is an important one, and it will almost certainly involve witnesses.  This is not a case in which a live broadcast is warranted.  *Id.*

Finally, another consideration is at play here.  No media outlet has requested permission to cover this case with a live stream.  This court does not itself offer live streaming.  Denis's motion in this regard appears to assume that a media outlet wants and will fund live-stream coverage, but this court is unaware of any such media outlet.

Denis's Motion for Live-Stream Media Coverage is denied.

It is so ordered.

DATED: Honolulu, Hawaii, August 31, 2021.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Denis v. Ige et al.*, Civil No. 21-00011 SOM-RT, ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LIVE-STREAM MEDIA COVERAGE