IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| :MEGESO-WILLIAM-ALAN: DENIS a.k.a. WILLIAM DENIS | ) ) ) | Civil NO. 21-00011 SOM-RT |
| Plaintiff, | ) ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) ) | |
| DAVID Y. IGE, CLARE E. CONNORS, DEREK S.K. KAWAKAMI, TODD RAYBUCK, DEREK KELLEY, RUSSELL HIMONGALA, and ARRYL KANESHIRO, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.        **INTRODUCTION.**

On December 5, 2020, several people called the Kauai County police department to complain about a group of four picketers in Kapaa. The picketers allegedly were violating emergency orders issued by Hawaii's Governor and Kauai's Mayor (the "Mask Mandates"). When Defendants Derek Kelley and Russell Himongala, two Kauai County police officers, arrived on the scene, they observed the picketers, including Plaintiff Megeso-William-Alan Denis, standing on the sidewalk less than six feet apart without face masks. That conduct violated the Mask Mandates.

The officers approached the group and issued them a

warning.  Three of the four picketers responded by leaving the area, but Denis remained behind.  He repeatedly told the officers that he did not have to comply with the Mask Mandates, either because they had no legal effect or because he had "authority under God" to go outside without a mask.

After Denis refused to put on a face mask and explicitly stated that the law did not apply to him, Defendants arrested him.  Their decision appears to have been based, at least in part, on a mistake.  Officer Kelley, in particular, seemed to think that the Mask Mandates required Denis to wear a mask *whenever* he was outside.  In reality, Denis only had to wear a mask if he was outdoors *and* less than six feet away from other people.  At the time of his arrest, Denis was socially distanced because all of the other picketers had left.

Denis was charged with violating the Mask Mandates. The Kauai prosecutor, however, soon moved to dismiss the charge. After the charge was dismissed, Denis, proceeding *pro se*, filed the present lawsuit against several individuals.  At this point, only two of his claims remain: (1) a claim that Officers Kelley and Himongala violated the Fourth Amendment by arresting him without probable cause, and (2) a claim that Officers Kelley and Himongala arrested him in retaliation for his exercise of his First Amendment rights.  To prevail on either claim, Denis must show that the officers lacked probable cause to arrest him.

2

Competing summary judgment motions on that issue are now before the court.  While Denis's motion is difficult to follow and dominated by irrelevant assertions, such as the claim that Defendants violated the Nuremberg Code, Denis appears to be contending that Defendants lacked probable cause because he was socially distanced at all times, including at the time of his arrest.  Defendants maintain that they had probable cause because, several minutes before his arrest, they had observed Denis violating the Mask Mandates.

This court agrees with Defendants.  Officer Kelley's body camera footage clearly shows Denis in violation of the Mask Mandates when Defendants arrived on the scene.  Although the officers did not immediately arrest him, the passage of time does not undermine the existence of probable cause.  *United States v. Bizier*, 111 F.3d 214, 219 (1st Cir. 1997).  Similarly, while Defendants may have chosen to let Denis off with a warning for his initial violation, and only decided to arrest him based on a mistaken understanding of the law, the Supreme Court has made it clear that such subjective considerations are "irrelevant to the existence of probable cause."  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  Accordingly, Defendants' motion for summary judgment is granted.  Denis's motion for summary judgment is denied.

II.        BACKGROUND.

        A.    The Mask Mandates.

        On April 13, 2020, Mayor Derek S.K. Kawakami, Kauai's

Mayor, issued an emergency order requiring "all persons over the

age of five (5) . . . to wear some form of face covering over

their nose and mouth when outside of their home."  Mayor's

Emergency Rule #6, https://www.kauai.gov/Portals/0/Civil_Defense/

EmergencyProclamations/Mayor%27s%20Emergency%20Rule%20%236%202020

0413.pdf.  A violation was punishable by a $5,000 fine or a

prison sentence of up to one year.  *Id.*

        On April 17, 2020, David Y. Ige, Hawaii's Governor,

issued a similar emergency order.  The Governor's order required

individuals to wear a face covering if they left their homes to

shop at essential businesses.  Fifth Supplementary Proclamation,

https://governor.hawaii.gov/wp-content/uploads/2020/04/

2004088-ATG_Fifth-Supplementary-Proclamation-for-COVID-19-distrib

ution-signed.pdf.  As with Mayor Kawakami's order, a violation

was punishable by a $5,000 fine or a prison sentence of up to one

year.  *Id.*

        In subsequent months, Governor Ige and Mayor Kawakami

updated their emergency orders.  At the times at issue in this

case, the following orders (collectively, the "Mask Mandates")

were in force, and a violation was again punishable by a fine of

$5,000 or a prison sentence of up to one year:

4

**State of Hawaii:** All individuals shall wear face coverings over their noses and mouths when in public settings.

The only exceptions to this requirement are:

...

A. Individuals with medical conditions or disabilities where the wearing of a face covering may pose a health or safety risk to the individual;

. . . .

J. While outdoors when physical distance of six (6) feet from other individuals (who are not members of the same household/living unit/residence) can be maintained at all times.

**County of Kauai:** [A]ll persons five (5) years of age or older are required to wear a face covering over their nose and mouth, whether indoors or outdoors, in any setting in which they are in close contact (within 6 feet) of people who don't live in their immediate household.  Face coverings must be worn by employees, customers, and visitors at all times inside any establishment in which close contact may occur.

**Exceptions:**
The only exceptions to this rule are individuals who can prove by a preponderance of the evidence that they are:

. . .

5. Incapable of wearing a face covering due to a medical condition or disability. Medical exemptions must be issued by a licensed medical doctor (MD), doctor of osteopathy (DO), advanced practice registered nurse (APRN), or physician assistant (PA). Medical exceptions should not specify the medical condition that precludes wearing of face coverings.  *Individuals must be able to*

5

> *present evidence of a medical exception when*
> *asked for it by law enforcement.*

Sixteenth Emergency Proclamation, https://governor.hawaii.gov/
wp-content/uploads/2020/11/2011098-ATG_Sixteenth-Proclamation-Rel
ated-to-the-COVID-19-Emergency-distribution-signed.pdf; Mayor's
Emergency Rule #19 (As Amended), https://www.kauai.gov/Portals/0/
Civil_Defense/EmergencyProclamations/2010134-COK_Mayor%27s%20Emer
gency%20Rule%20No_%2019%2C%20Amendment%20No_%201%20%28certified%2
9%20-%20signed.pdf (emphasis added).

It appears that Kauai County law enforcement officers
usually gave violators more than one chance to comply with the
law by issuing warnings before taking further action.  For
instance, in his motion for summary judgment, Denis asserts that
on certain occasions he has been less than six feet away from
"the Mayor, Police Chief, KPD officers, [and] State Law
enforcement" without wearing a mask, and that he was not
arrested.  ECF No. 155, PageID # 1635.  Defendants concede that
that assertion is true.  ECF No. 160, PageID # 1692.  More
significantly, as discussed in greater detail below, the
circumstances surrounding Denis's arrest also demonstrate that
law enforcement officers warned violators before issuing
citations or making arrests.

**B.   Denis's Arrest.**

On December 5, 2020, Denis and three other individuals
began a demonstration along Kuhio Highway near the Kauai Village

Shopping Center in Kapaa.  *See* ECF No. 151-4.  Around noon, the
Kauai County police department received calls complaining that
the picketers were neither wearing masks nor remaining six feet
apart from one another.  *See* ECF No. 151-3.  Officers Kelley and
Himongala responded to those complaints.  At 12:53 p.m., the
officers parked their vehicles at the shopping center and walked
towards the group of four picketers next to the highway.  ECF No.
151-4.

Officer Kelley's body camera footage plainly shows
that, as the officers approached the group, Denis was less than
six feet away from the nearest picketer.  ECF No. 151-4, at
00:28-00:47.  None of the picketers was wearing a mask.  *Id.*  As
Officer Kelley approached the group, some of the picketers moved
away from one another, apparently in an attempt to maintain the
requisite six feet of distance from one another.  *Id.* at 00:47.

Denis disagrees with this version of events.  In his
own motion for summary judgment, he asserts that the picketers
were "peacefully protesting six feet apart" and that he was
"always more than six feet away" until Kelley and Himongala
approached.  ECF No. 155, PageID # 1628.  Denis has not submitted
any evidence, such as a declaration, in support of that
statement.

In *Fraser v. Goodale*, the Ninth Circuit held that "[a]t
the summary judgment stage, we do not focus on the admissibility

7

of the evidence's form.  We instead focus on the admissibility of its contents."  342 F.3d 1032, 1036 (9th Cir. 2003).  District courts in the Ninth Circuit have split on the issue of whether, when a party is proceeding *pro se*, *Fraser* requires courts to consider factual statements made in unsworn briefs.  *See, e.g.*, *Cape v. San Luis Obispo Sheriff Dep't*,, 2022 WL 2308256, at *4 (C.D. Cal. June 1, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 2304289 (C.D. Cal. June 27, 2022).  The Ninth Circuit has indicated, however, that when a *pro se* plaintiff signs "his pleadings and/or motions under penalty of perjury," courts must "treat them as evidence for the purpose of summary judgment."  *Lopez v. Country Ins. & Fin. Servs.*, 252 F. App'x 142, 144 n.2 (9th Cir. 2007).  Denis's brief states "under penalty of law" that it was "true and correct."  ECF No. 155, PageID # 1645.  That is likely sufficient to require this court to consider the factual statements in his brief.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

This court, however, need not accept Denis's statements as true for the purposes of this motion.  The Supreme Court has held that, in ruling on summary judgment motions, district courts must reject declarations that are "utterly discredited" by video evidence.  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that because the plaintiff's statements were contradicted by video evidence, the lower courts "should not have relied on such

visible fiction" and instead should have "viewed the facts in the light depicted by the videotape"); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1218 (9th Cir. 2022) ("We agree with the Sixth Circuit and find that, for purposes of ruling on a motion for summary judgment, a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence." (Emphasis in original)).  Here, Denis's claim that he stood six feet away from other picketers is directly contradicted by Officer Kelley's body camera footage.

Of course, on many occasions, judging distance from body camera footage may be difficult.  In this case, however, the task is made easier by the Mask Mandates themselves.  The Mandates required individuals to wear a face covering unless they maintained a distance of six feet from other people.  The camera footage shows that Denis was substantially less than one body length away from the nearest picketer when the officers approached.  ECF No. 151-4, at 00:28-00:47.  In light of the body camera footage, this court can conclude that, as a matter of law, Denis violated the Mask Mandates.  *Scott*, 550 U.S. at 380-81; *Hughes*, 31 F.4th at 1218.

After he approached the group, Officer Kelley introduced himself and spoke with the picketers.  He told them that the police had received a "couple calls" stating that the

picketers were not wearing masks.  ECF No. 151-4, at 00:40-00:47.

In response, one picketer stated that the picketers did not need

masks, because they were outside and socially distanced.  *Id.* at

00:51.  Officer Kelley disagreed.  He told the picketers that it

was "a law right now that you must have a mask on while outside,"

and that the picketers "must remain social distanced as well."

*Id.* at 01:05-07.  In this regard, Officer Kelley was incorrect.

The Mask Mandates only required individuals to wear masks outside

if they were not socially distanced and if no other exception

applied.[1]

Denis, however, did not engage Officer Kelley on that

point.  Instead, he told Officer Kelley that the Mask Mandates

were "not a law" at all.  *Id.* at 00:56-00:58.  He continued to

express his displeasure while Officer Kelley attempted to defuse

the situation.  Officer Kelley told the group that although

protesting was "within their constitutional rights," they needed

to "don their masks" to continue with the demonstration.  *Id.* at

01:15-01:20.  Denis responded by telling the officers that they

had been "served notices of liability trespass."[2]  *Id.* at 01:38-

---

[1]  Officer Kelley repeatedly stated his mistaken
understanding of the law.  *See id.* at 02:55.

[2]  Denis has submitted examples of these "notices of
liability trespass" in connection with a previous motion.  *See*
ECF No. 50, PageID # 589.  These are rambling documents that
essentially state that Denis has no obligation to follow any
"mandates, proclamations, or edicts" issued by the government
during the COVID-19 pandemic.  *See id.*  Denis apparently sent

01:42.  When Officer Kelley repeated that Denis needed to wear a mask and maintain social distance, Denis responded, "No, that's OK.  My authority's under God."  *Id.* at 01:54-01:58.  Officer Kelley then gave Denis "an advisory" and told Denis that he had to put his mask on.  *Id.* at 02:00-02:05.

Several other picketers also disputed the legality of the Mask Mandates.  When Officer Kelley informed them that the Governor's emergency order had the force of law, Denis again retorted that the Mandate was "not a law."  *Id.* at 02:45-02:47.  Once more, Officer Kelley told Denis that he "appreciat[ed] what you guys are doing," and that the picketers "had their rights," but that they had to obey the law.  *Id.* at 03:25-03:30.  This discussion continued for several more minutes.  *Id.* at 03:30-06:20.  In the middle of the conversation, Denis approached another picketer to speak with him.  Once again, Denis stood less than six feet away from the other picketer.  *Id.* at 05:20.  He still had not put on a mask.  *Id.*  When the discussion ended, two of the four picketers left.  *Id.* at 06:20.

At that point, Denis and one other picketer remained,

_____

these notices to various government officials.  In his briefing, Denis has repeatedly cited these notices.  *See, e.g.*, ECF No. 155, PageID # 1635 (arguing that Defendants "admitted on tape that Plaintiff stated his Registered Notices of Liability Trespass to the officers [but] that they ignored [them]").  To state the obvious, Denis's "notices of liability trespass" had no legal effect.  Denis cannot avoid complying with a law he disagrees with simply by telling the government he is not bound by it.

and Officer Kelley again asked Denis to put his mask on.  He responded that "it's not gonna happen." *Id.* at 06:17.  He cited God and stated that he did not need to wear a mask for medical reasons. *Id.* at 06:17-06:25.  When Officer Kelley asked if Denis had a note from a doctor, Denis explained, "I don't go to normal doctors." *Id.* at 06:28-06:30.  Officer Kelley repeated the question, and Denis responded, "I have a God-given note." *Id.* at 06:35.

Officer Kelley spoke to Denis for a few more minutes, then told Denis once again that he needed to wear a mask to continue his demonstration.  Denis replied that he had intended to leave but decided to stay because Officer Kelley was "trying to take away [his] rights" by "denying him the right to make [his] own medical decisions." *Id.* at 09:30-09:44.  Officer Kelley explained that the law did allow for medical exceptions, but that Denis had to provide him with a note from a doctor. *Id.* at 09:49-09:52.  Denis told Officer Kelley that the law was unfair because it "didn't allow natropaths." *Id.* at 09:53-09:55.

Officer Kelley told Denis "once again," that "if you want to leave, you're free to leave." *Id.* at 09:55-09:59.  But, "if you go back out, and continue your protest," then "you must have your mask.  If you refuse to, then I'm going to cite you." *Id.* at 09:59-10:10.  By then, Denis was the only remaining picketer. *Id.*

12

Less than a minute later, Officer Kelley noticed that Denis was "going back out." *Id.* at 10:50. After telling the other officers that Denis was "looking for trouble," *id.* at 11:18-11:19, Officer Kelley decided to arrest Denis. *Id.* At the time, because Denis was alone, there was no one within six feet of him. *Id.*

Officers Kelley and Himongala arrested Denis. *Id.* at 11:40. They took Denis to Samuel Mahelona Memorial Hospital for evaluation before taking him to the Kauai Police Department cell block. ECF No. 151-2, PageID # 1604, 1606. The charges against Denis were ultimately dismissed after the State of Hawaii moved to dismiss them with prejudice. ECF No. 160-2, PageID # 1696.

### C. Procedural Background.

On January 6, 2021, Denis, proceeding *pro se*, filed this action. ECF No. 1. The Complaint included three general categories of claims. First, Denis brought what appeared to be claims that Defendants Kelley and Himongala violated the Fourth Amendment by arresting him without probable cause and using excessive force. Second, Denis alleged that the Mask Mandates were unconstitutional, and he brought claims against Governor Ige, Mayor Kawakami, and State Attorney General Claire Connors based on their alleged roles in enacting them. Third, Denis appeared to allege that two other Kauai officials, Chief of Police Todd Raybuck and County Council Chairperson Arryl

Kaneshiro, were indirectly responsible for his wrongful arrest. *See generally Denis v. Ige* (*Denis I*), 538 F. Supp. 3d 1063, 1071 (D. Haw. 2021) (describing the initial complaint).

Ige, Kawakami, Connors, Raybuck, and Kaneshiro filed motions to dismiss the Complaint.  ECF Nos. 22, 24, 31.  Kelley and Himongala filed answers to the Complaint.  ECF Nos. 34, 35. On May 12, 2021, this court granted the motions to dismiss.  This court ruled that Denis had failed to state a claim based on his allegations that the Mask Mandates were unconstitutional, and that Denis had failed to identify any actions attributable to Raybuck or Kaneshiro that had harmed him.  *Denis I*, 538 F. Supp. 3d at 1076-82.

On June 4, 2021, Denis filed a First Amended Complaint. ECF No. 63.  For the most part, the First Amended Complaint repeated the claims in the initial Complaint, although Denis dropped his claims against Kaneshiro.  *Denis v. Ige* (*Denis II*), 557 F. Supp. 3d 1083, 1090 (D. Haw. 2021) (describing the First Amended Complaint).  Kelley and Himongala again filed answers, and the remaining Defendants again moved to dismiss.  ECF Nos. 64, 66, 67, 70.  On August 31, 2021, this court granted the motions to dismiss.  This court again ruled that Denis had failed to state a claim in alleging that the Mask Mandates were unconstitutional or otherwise unlawful.  *Denis II*, 557 F. Supp. 3d at 1093-1100.  The claims against Ige, Connors, Kawakami, and

14

Raybuck were dismissed with prejudice.  *Id.* at 1101.
Accordingly, only the claims against Kelley and Himongala
remained.

On September 17, 2021, Kelley and Himongala filed a
motion for partial judgment on the pleadings.  ECF No. 100-1.
They maintained that, although Denis had included allegations in
support of his excessive force claim in the initial Complaint, he
had omitted those allegations from the First Amended Complaint.
*See id.* at 1106.  On that basis, they contended that the First
Amended Complaint failed to state an excessive force complaint.
*Id.* at 1106-07.

This court agreed and dismissed Denis's excessive force
claims.  *Denis v. Ige* (*Denis III*), 2021 WL 5312294, at *3 (D.
Haw. Nov. 15, 2021).  Because it appeared that Denis might be
able to save his excessive force claim through an amendment, the
dismissal was without prejudice.  *Id.* at *4.  The court noted,
however, that Denis's briefing had indicated "that any amended
complaint [would] include new claims that are patently
frivolous."  *Id.*  For instance, Denis indicated that he intended
to assert claims based on the King James Bible and the Nuremberg
Code.  *Id.*  To avoid unnecessary motions, this court granted
Denis leave to file, by no later than December 13, 2021, a motion
seeking leave to file an amended complaint under Rule 15(a)(2) of
the Federal Rules of Civil Procedure.  *Id.*  This court stated

that any motion Denis filed "**must** include as an attached exhibit a copy of the proposed amended complaint that Denis seeks to file." *Id.* (emphasis in original).

On November 18, 2021, Denis filed a motion for permission to file a Second Amended Complaint. That motion did not include a copy of a proposed amended complaint (as this court had instructed); it also failed to comply with the District of Hawaii's local rules. ECF No. 124. Magistrate Judge Rom Trader therefore denied the motion without prejudice and allowed Denis to file a second motion to be accompanied by a proposed amended complaint. *Id.* In his order, Judge Trader cautioned Denis that "any proposed amended complaint must seek only those amendments permitted in Judge Mollway's Order, comply with the Local Rules, and be filed by the 12/13/21 deadline. Failure to do so may result in sanctions to include possible dismissal with prejudice of this action." *Id.*

On December 12, 2021, Denis filed a proposed Second Amended Complaint, but that document was not accompanied by a Rule 15(a)(2) motion. ECF No. 128. Judge Trader therefore rejected that pleading. *Id.* He instructed Denis to file, by December 21, 2021, a submission that included both a proposed Second Amended Complaint *and* a motion for leave to file the proposed Second Amended Complaint. *Id.* Denis did not comply with that order and has made no further attempt to seek leave to

16

file a Second Amended Complaint.  As a result, Denis failed to amend his excessive force claims.  His failure to comply with court orders and the local rules[3] causes Denis's excessive force claims to play no part in this case.[4]

On January 26, 2022, Kelley and Himongala filed a second motion for partial judgment on the pleadings.  ECF No. 131.  In that motion, they noted that although Denis's primary claims against the officers appeared to be Fourth Amendment claims, the First Amended Complaint also mentioned the First Amendment and Fourteenth Amendments.  *See* ECF No. 131-1, PageID # 1405.  The officers argued that to the extent that Denis had alleged that they violated the First Amendment by arresting him in retaliation for a protest, Denis had failed to state a claim

---

[3] This is hardly the only time Denis has failed to comply with court rules.  For instance, he has frequently filed impermissible surreplies.  ECF Nos. 50, 85.  He has also disregarded the page limits set by the local rules.  ECF Nos. 43-47, 50.  Finally, on more than one occasion, he has failed to file opposition briefs in accordance with deadlines set by Local Rule 7.2.  *See* ECF Nos. 134, 161.

[4] While Denis's failure to comply with local rules and court orders has kept his excessive force claims from being now before this court, even had those claims survived, Denis would have had to overcome considerable obstacles at trial.  For instance, on the body camera footage, Denis's screams of pain after his arrest might not match the medical evidence.  ECF No. 151-4, at 11:55.  Officer Himongala has also submitted a declaration stating that although Denis screamed in pain when a doctor examined him by lightly touching his wrists, he did not complain at all when a nurse grabbed and held his wrists after the examination, possibly because he thought no one was paying attention.  ECF No. 151-2, PageID # 1606.

because he had not alleged that the officers had a "retaliatory animus" or "retaliatory motive." *Id.* at 1414-15. They also maintained that Denis's Fourteenth Amendment claims based on his allegedly wrongful arrest were subsumed by his Fourth Amendment claims. *Id.* at 1415-16. Finally, Kelley and Himongala argued that Denis had failed to state a claim against them in their official capacities, and that he had failed to state a claim under the Hawaii constitution. *Id.* at 1416-1424. This court held that Denis had adequately alleged a First Amendment claim, but agreed with the officers on their other points. *See generally Denis v. Ige* (*Denis IV*), 2022 WL 1046274, at *1-4 (D. Haw. Apr. 7, 2022). This court therefore granted the second motion for partial judgment on the pleadings in part and denied it in part. *Id.* at *5.

On May 24 and 25, 2022, the parties filed the present motions for summary judgment. ECF Nos. 150, 155.

**III.     LEGAL STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The movants must support their position concerning whether a material fact is genuinely disputed by

18

either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  *See id.* at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*,

477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.  *T.W. Elec. Serv.*, 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  *Id.*

## IV.        ANALYSIS.

### A.    The Summary Judgment Motions.

Defendants contend that they are entitled to summary

judgment on Denis's First and Fourth Amendment claims.  According to Defendants, the absence of probable cause is an element of both claims.  ECF No. 150-1, PageID # 1560, 1567.  Defendants maintain that, as a matter of law, Denis cannot establish[5] that element.  *See id.*

Denis's motion for summary judgment is difficult to follow.  Most of his arguments have either already been rejected by this court or are irrelevant.  For instance, he contends that:

- The Mask Mandates "are simply an opinion," and they "are unlawful, because a mandate also requires consent from the person being mandated." ECF No. 155, PageID # 1627, 1636.  This court has already addressed the legality of the Mask Mandates in two prior orders.  ECF Nos. 62, 97.

- Obeying the Mask Mandates "leaves Plaintiff with a status of being a SLAVE, and slavery was abolished on December 18, 1865." ECF No. 155, PageID # 1640; *see also id.* at 1629 ("A mask is a sign of slavery.").  As this court stated in a prior order, that assertion "trivializes the horrors of slavery," which involved "the forced subjugation and brutal exploitation of human beings." *Denis II*, 557 F. Supp. 3d at 1095.

- Defendants have violated several criminal laws and the Nuremberg Code.  ECF No. 155, PageID # 1629-34.

- Officers Kelley and Himongala (two relatively junior police officers) "failed to conduct a proper investigation regarding COVID-19 as a real

---

[5]  Because Officers Kelley and Himongala arrested Denis without a warrant, they bear the initial burden of producing "some evidence that [they] had probable cause for a warrantless arrest." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001).  The ultimate burden of proof, however, remains on Denis.  *Id.*

pandemic." *Id.* at 1636.  According to Denis, COVID-19 is a "hoax."  *Id.* at 1637.

- Officers Kelley and Himongala have "kept known therapeutic cures like Ivermectin, HCQ, Zinc, Vitamins C & D, and more from the public and to this day are putting the Health, Safety, and Welfare of our children, Plaintiff and the governed at risk by using false PCR testing, and drug therapies upon the public as if we are lab rats." *Id.* at 1638.

- Officers Kelley and Himongala are "treasonous to the Constitution of the Republic and there is no statute of limitations on fraud." *Id.* at 1640.

- Denis is making a "one-time proposed summary judgment offer" that "expires June 3, 2022."  The offer requires Officers Kelley and Himongala to pay Denis $92 million, give him an "irrevocable 99-year lease of 144 acres," take more than 3,000 hours of formal classroom training on the state and federal constitutions, and apologize publicly. *Id.* at 1642-43.  In return, Denis offers to refrain from filing a criminal case, to refrain from recommending Defendants for prosecution at the Nuremberg trials, and to refrain from filing charges in the "International Court."  *Id.* at 1644-45.

However, Denis does also touch on the issue of probable cause. Specifically, he asserts that Officers Kelley and Himongala arrested him even though he maintained a distance of six feet from other picketers at all times.  ECF No. 155, PageID # 1628. The court therefore interprets Denis's *pro se* brief, which also seeks summary judgment, as arguing that the evidence establishes, as a matter of law, that Defendants did not have probable cause to arrest him.

22

In short, the resolution of the competing summary judgment motions turns on the presence or absence of probable cause.  Defendants argue that they had probable cause to arrest Denis, and Denis argues that they did not.  This court agrees with Defendants.

**B.    Defendants are Entitled to Summary Judgment on Denis's Fourth Amendment Claim for False Arrest.**

Defendants first address Denis's Fourth Amendment claim.  ECF No. 150-1, PageID # 1560-66.  The absence of probable cause is an element of a Fourth Amendment wrongful arrest claim. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." (internal quotation marks omitted)).  "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Id.* (internal quotation marks omitted).

The probable cause inquiry is an objective one.  The Supreme Court has made it clear that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  Indeed, "an arresting officer's state of mind (except for the facts that he knows) is *irrelevant* to the existence of probable cause." *Id.* (emphasis in original).  "The Fourth Amendment's concern with 'reasonableness'

23

allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."[6]  *Id.* (internal brackets and quotation marks omitted) (emphasis in original).

Objectively, Defendants had probable cause to arrest Denis for violating Mayor Kawakami's Mask Mandate.  That order required Denis to wear a mask while outdoors "in any setting in which [he was] in close contact (within 6 feet) of people who [didn't] live in [his] immediate household."  Mayor's Emergency Rule #19 (As Amended), https://www.kauai.gov/Portals/0/ Civil_Defense/EmergencyProclamations/2010134-COK_Mayor%27s%20Emer gency%20Rule%20No_%2019%2C%20Amendment%20No_%201%20%28certified%2 9%20-%20signed.pdf.  On more than one occasion, Defendants saw Denis standing less than six feet away from someone whom the officers had no reason to think lived in his immediate household.[7]  That observation provided the officers with the requisite probable cause.  *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor

---

[6]  According to the Supreme Court, this standard "ensure[s] that officers may go about their work without undue apprehension of being sued."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019).  The Court has concluded that allowing considerations about an officer's state of mind to influence the probable cause analysis would subject those officers to "overwhelming litigation risks."  *Id.*

[7]  Denis has never contended that any other picketer lived in his immediate household.

criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Before he was arrested, Denis told the officers that he did not have to wear a mask because of his medical condition. But Mayor Kawakami's order, unlike Governor Ige's order, stated that medical exemptions had to be issued by certain medical professionals.  It also required Denis to "present evidence of a medical exception when asked for it by law enforcement."  Mayor's Emergency Rule #19 (As Amended), https://www.kauai.gov/Portals /0/Civil_Defense/EmergencyProclamations/2010134-COK_Mayor%27s%20E mergency%20Rule%20No_%2019%2C%20Amendment%20No_%201%20%28certifie d%29%20-%20signed.pdf.  Officer Kelley asked Denis for such evidence on multiple occasions, but Denis did not provide any evidence, instead indicating that he did not see "normal" doctors.  Under those circumstances, Defendants had probable cause to believe that Denis did not meet the requirements for a medical exception.

The court recognizes that, initially, Officer Kelley appears to have decided to let Denis off with a warning.  Officer Kelley arrested Denis only after Denis continued to protest without a mask.  At that point, Denis, although unmasked, was alone and therefore in compliance with the Mask Mandates.

That raises two issues.  First, while Defendants had probable cause to arrest Denis for violating the Mask Mandates

when they arrived on the scene, the officers decided to exercise their discretion and just caution Denis.  In other words, the only offense that justifies Denis's arrest is one that Defendants chose upon first accosting him that day not to arrest him for.  Second, a few minutes passed between Denis's violation of the Mask Mandates and his arrest.  Neither consideration invalidates the otherwise legal arrest.

As to the first issue, *Devenpeck* is instructive.  In that case, the plaintiff, Jerome Alford, stopped to help two stranded motorists.  *Id.* at 148.  When Joi Haner, a police officer, also stopped to help, Alford "hurried back to his car and drove away."  *Id.*  The motorists asked Haner if Alford was also a police officer.  *Id.*  They explained that his "statements, and his flashing, wig-wag headlights, had given them that impression."  *Id.*  Concerned that Alford might be impersonating a police officer, Haner followed Alford and pulled him over.  *Id.* at 148-49.  Alford answered Haner's questions evasively.  *Id.* at 149.

A short time later, Haner's supervisor, Sergeant Devenpeck, arrived at the scene and noticed a tape recorder on the passenger seat of Alford's car.  *Id.*  Devenpeck played the tape in the recorder and discovered that Alford been recording his conversation with the officers.  *Id.*  Devenpeck then arrested Alford for violating the Washington Privacy Act.  *Id.*

26

Devenpeck called a deputy county prosecutor and recounted the events leading to Alford's arrest. *Id.* at 150. The two discussed several possible charges, including the "violation of the Privacy Act, impersonating a police officer, and making a false representation to an officer." *Id.* The prosecutor advised Devenpeck that there was "clearly probable cause" and suggested that the respondent also be charged with "obstructing a public servant." *Id.* Devenpeck rejected that suggestion. *Id.* He explained that "the State Patrol [did] not, as a matter of policy, 'stack charges' against an arrestee." *Id.* Ultimately, Haner charged Alford only with violating the Washington Privacy Act.[8] *Id.*

It turned out that Alford had not violated the Washington Privacy Act by recording the officers. *See id.* at 151-52. Alford brought a 42 U.S.C. § 1983 claim against Devenpeck and Haner. *Id.* at 151. The case went to trial, and the jury found that the officers had had probable cause to arrest Alford, apparently based on the offenses that Devenpeck had decided not to charge Alford with (impersonating a law enforcement officer or obstructing a law enforcement officer). *Id.*

---

[8]  Haner also issued Alford a ticket for his flashing headlights, but, under Washington law, that offense did not permit the officers to arrest Alford. *Id.*

27

On appeal, the Ninth Circuit held that the jury's verdict was based on a mistaken understanding of the law. *Id.* In the Ninth Circuit's view, the offenses of impersonating a law enforcement officer or obstructing a law enforcement officer could not provide the requisite probable cause because neither offense was "closely related" to the offense Devenpeck actually decided to charge Alford with. *Id.*

The Supreme Court disagreed. *Id.* at 153-56. The Court reasoned that the Ninth Circuit's "closely related" rule made "the lawfulness of an arrest turn upon the motivation of the arresting officer" because, under that rule, only facts related to the offense that the officers chose to arrest a plaintiff for mattered. *Id.* at 154. The Court rejected the Ninth Circuit's rule. It explained that subjective considerations could never provide a basis for invalidating an arrest. *Id.* at 154-55. The Court remanded the case to the Ninth Circuit with instructions to determine whether the evidence supported the verdict that Devenpeck had probable cause to arrest based on the offenses of impersonating a police officer or obstructing a law-enforcement officer (offenses that Devenpeck expressly decided not to arrest Alford for). *Id.* at 156.

In other words, in *Devenpeck*, the Court held that a decision not to arrest a suspect for a particular crime is a subjective decision. A subjective decision does not affect the

28

probable cause analysis.  That principle applies here.
Defendants' decision not to arrest Denis after they saw him
violating the Mask Mandates was a subjective choice.  That
"[s]ubjective intent of the arresting officer" is "simply no
basis for invalidating [the] arrest."  *Devenpeck*, 543 U.S. at
154-55 (emphasis in original).

Nor does Defendants' delay in arresting Denis undermine
the existence of probable cause.  It "is well-established that
there is no requirement that an offender be arrested the moment
probable cause is established."  *United States v. Haldorson*, 941
F.3d 284, 291 (7th Cir. 2019) (internal quotation marks omitted).
"[P]robable cause to arrest, once formed, will continue to exist
for the indefinite future, at least if no intervening exculpatory
facts come to light."  *United States v. Bizier*, 111 F.3d 214, 219
(1st Cir. 1997) (internal quotation marks omitted).  No such
exculpatory facts came to light after Defendants saw Denis
violate the Mask Mandates.  Accordingly, the passage of time did
not negate the existence of probable cause.[9]  *See, e.g.*,

_____

[9]  To the extent that police officers may later decide to
arrest a suspect for a crime they that had initially decided to
overlook, they are no different than prosecutors, who may later
decide charge a suspect with a crime even if they had initially
decided to exercise prosecutorial discretion.  *See generally New
York Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 492
(2d Cir. 2019) ("Prosecutors retain broad discretion to enforce
the Nation's criminal laws . . . .  Even after Holder announced
publicly that he had accepted the recommendations in Mr. Durham's
memoranda, he retained jurisdiction to reverse course and bring
charges at a later time." (internal quotation marks omitted)).

*Haldorson*, 941 F.3d at 291 (delay of more than three weeks before an arrest did not undermine probable cause); *United States v. Hinson*, 585 F.3d 1328, 1334 (10th Cir. 2009) ("Although the controlled buy had occurred approximately a month before Hinson's arrest, the passage of time did not make that information state or otherwise destroy the officers' probable cause."); *Forman v. Richmond Police Dept.*, 104 F.3d 950, 962 (7th Cir. 1997) (delay of more than a year before an arrest did not undermine probable cause).

Finally, the court notes that this is not a case in which the two officers decided to let Denis off with a warning but ended up arresting him later without any further information that was concerning.  After the officers saw Denis violate the Mask Mandates, they spoke to Denis, who repeatedly indicated that he intended to continue to violate the law.  Twice, Denis told the officers that he did not need to obey the Mask Mandates because they were "not laws."  ECF No. 151-4, at 00:56-00:58, *id.* at 02:45-02:47.  He also repeatedly told the officers that he was authorized by God to be without a mask.  *Id.* at 01:54-01:58, *see also id.* at 06:35.  In short, Denis told the officers, in no uncertain terms, that if they let him go he would continue to violate the law.  The officers thereafter arrested Denis.

The record establishes that Officers Kelley and Himongala had probable cause to arrest Denis.  The existence of

30

probable cause defeats Denis's Fourth Amendment claim.[10]
Defendants' motion for summary judgment on that claim is granted.
Denis's competing motion for summary judgment on that claim is
denied.

### C.   Defendants are Entitled to Summary Judgment on Denis's First Amendment Retaliation Claim.

Defendants maintain that they are also entitled to
summary judgment as to Denis's claim that they arrested him in
retaliation for his exercise of his First Amendment rights.  ECF
No. 150-1, PageID # 1566-72.  This court agrees with Defendants.
Because Defendants have established, as a matter of law, that
they had probable cause to arrest Denis, he cannot prevail on his
First Amendment retaliation claim.  *See Nieves v. Bartlett*, 139
S. Ct. 1715, 1723-25 (2019).

In *Nieves*, the Supreme Court held that plaintiffs must
plead and prove the absence of probable cause to prevail on a
claim that police officers used an arrest as retaliation for the
arrestee's exercise of First Amendment rights.  *Id.* at 1723-25.
A plaintiff cannot succeed by arguing that, even though an
officer had probable cause, the officer used that probable cause
as a pretext and was really motivated by a retaliatory animus.

---

[10]   For the same reasons, Defendants are entitled to
qualified immunity on this claim.  *See District of Columbia v.
Wesby*, 138 S. Ct. 577, 589 (2018) ("officers are entitled to
qualified immunity . . .  unless . . . they violated a federal
statutory or constitutional right").

*Id.* at 1725 ("Absent such a showing, a retaliatory arrest claim fails.")

The Court also held that, as with the Fourth Amendment, in the First Amendment context, the existence of probable cause turns on an objective analysis:

> [The plaintiff's] approach dismisses the need for any threshold showing, moving directly to consideration of the subjective intent of the officers.  In the Fourth Amendment context, however, we have almost uniformly rejected invitations to probe subjective intent. Police officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in circumstances that are tense, uncertain, and rapidly evolving.  To ensure that officers may go about their work without undue apprehension of being sued, we generally review their conduct under objective standards of reasonableness.  Thus, when reviewing an arrest, we ask whether the circumstances, viewed objectively, justify the challenged action, and if so, conclude that action was reasonable *whatever* the subjective intent motivating the relevant officials.  A particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest.

> [The plaintiff's] purely subjective approach would undermine that precedent by allowing even doubtful retaliatory arrest suits to proceed based solely on allegations about an arresting officer's mental state. . . .

> . . . .

> Adopting [the rule that a plaintiff must plead and prove the absence of probable cause] in this closely related context addresses those familiar concerns.  Absent such a showing, a retaliatory arrest claim fails.

*Id.* at 1724-25 (emphasis in original) (internal brackets, citations, and quotation marks omitted).

In other words, in *Nieves*, the Court held that its Fourth Amendment probable cause analysis applies when a plaintiff argues that an arrest was in retaliation for the exercise of First Amendment rights. *Id.* In the Fourth Amendment context, this court has already held that Defendants have established that they had probable cause to arrest Denis as a matter of law. That conclusion is also fatal to Denis's First Amendment claim.

In *Nieves*, the Court did establish a "narrow qualification" to its rule. *Id.* An arrest may be retaliatory despite the presence of probable cause if the arrest is made under "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727. "For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." *Id.* The Court therefore held that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same

33

sort of protected speech had not been." *Id.* Like the "probable cause analysis, [this rule] provides an objective inquiry that avoids the significant problems that would arise from reviewing police conduct under a purely subjective standard." *Id.* The arresting officer's subjective intent is again "irrelevant." *Id.*

Some evidence suggests that Kauai County police officers did not arrest everyone who violated the Mask Mandates. Defendants concede that, on other occasions, Denis was not arrested even though he was seen without a mask while not socially distanced. ECF No. 160, PageID # 1692. More significantly, Defendants' own conduct before Denis's arrest suggests that Kauai police officers usually gave violators a warning.

Defendants, however, contend that Denis has not met his burden of showing that he was "similarly situated" to the violators that Kauai police offers chose to let off with warnings. ECF No. 150-1, PageID # 1568. According to Defendants, they only arrested Denis "after he repeatedly and affirmatively refused multiple requests to disperse or don a mask." *Id.* Therefore, "to qualify as 'similarly situated,'" individuals would "need to be outside unmasked in a public area and would need to repeatedly and affirmatively refuse an officer's request to disperse or don a mask." *Id.*

That argument glosses over Officer Kelley's mistaken

34

understanding of the law.  Officer Kelley told Denis that he had to wear a mask outdoors even if he was socially distanced, something that the Mask Mandates did not require.  While Officer Kelley arrested Denis only after he had refused to comply with Officer Kelley's instructions, those instructions told Denis that he had to do something that he had no obligation to do.  This circumstance raises questions about whether Denis's situation was similar to that of individuals police let off with warnings.  On the one hand, the "similarly situated" analysis is meant to determine whether an officer used a minor violation as a pretext for retaliation against protected speech.  If Officer Kelley arrested Denis because Officer Kelley mistakenly believed Denis was not following the law, that would suggest that the arrest was not retaliatory.  On the other hand, this court is reluctant to say that an officer's mistake of law can nullify a First Amendment claim.

This court need not resolve these issues.  Whether or not Officer Kelley made a mistake, Denis made statements to Defendants that indicated an intent to continue to violate the law.  Nothing about those statements was tied to Officer Kelley's legal mistake.  That is, there is no indication that Denis was declining to wear a mask because he was socially distanced and therefore did not have to wear a mask.  Instead, he informed the officers the Mask Mandates were not laws at all and he took his

authority from God.  ECF No. 151-4, at 00:56-00:58, *id.* at 02:45-02:47; *id.* at 01:54-01:58; *id.* at 06:35.  Denis expressed his intent to continue to disregard the Mask Mandates.  Denis would have been "similarly situated" only to others pledging continuing disregard of a law.

Denis has the burden of proof on the "similarly situated" issue.  *Nieves*, 139 S. Ct. at 1727.  He has presented no evidence showing that Kauai County police officers decided not to arrest other individuals who pledged to continue with violations of any law (or even of an officer's mistaken statement of law) after receiving warnings.  Possibly, there were other individuals who complained about the Mask Mandates but did not continue to violate them in the presence of the police, but there is no evidence of that in the record.  Having failed to introduce such evidence, Denis cannot rely on the narrow exception identified by the Supreme Court in *Nieves*.[11]  Defendants' motion for summary judgment on Denis's First Amendment claims is granted.  Denis's motion for summary judgment on the same claims is denied.

## V.        CONCLUSION.

Defendants' motion for summary judgment is granted. Denis's motion for summary judgment is denied.  This order leaves

---

[11]  For the same reasons, Defendants are entitled to qualified immunity on this claim.  *See Wesby*, 138 S. Ct. at 589.

no claim remaining for further adjudication.  The Clerk is

instructed to enter judgment in favor of Defendants.

It is so ordered.

DATED: Honolulu, Hawaii, July 29, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Denis v. Ige et al.*, Civil No. 21-00011 SOM-RT, ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT